**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,**

      **Plaintiff,**

  v.                              Civil Action 2:20-cv-04624
                                    Chief Judge Algenon L. Marbley
                                    Magistrate Judge Kimberly A. Jolson

**THE OHIO STATE UNIVERSITY,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion to Amend/Correct the Preliminary Pretrial Order. (Doc. 26). Specifically, the EEOC requests a 30-day discovery extension, leave to take an eleventh deposition, and more time to depose Jackie Chambers. (*Id.*). For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the EEOC's Motion.

**I.    BACKGROUND**

This case is an age discrimination case brought by the EEOC against The Ohio State University ("OSU"). The EEOC alleges OSU discharged Alan Knox, age 53, from a human resources position at OSU in violation of the Age Discrimination in Employment Act of 1967. (Doc. 27 at 1). The EEOC supports the case by alleging OSU replaced Mr. Knox with Jennifer Langese, age 28, six months after Mr. Knox's termination. (Doc. 27 at 1–2). The case was filed on September 3, 2020 (Doc. 1), and discovery began in October 2020. (Doc. 7). And, under the current scheduling order, discovery closed on October 5, 2021. (Doc. 15). The dispositive motion deadline, however, has been stayed in order to allow OSU more time to depose Mr. Knox. (Docs. 24, 25; *see also* Doc. 35).

**II.      DISCUSSION**

As noted, the EEOC seeks to open up three pathways for additional discovery in this matter even though discovery has closed. To do so, the EEOC must satisfy Rule 16(b)(4) of the Federal Rules of Civil Procedure. Rule 16(b)(4) provides that a court may modify a scheduling order for good cause. Factors for determining good cause include "whether the need for additional discovery is due to the movant's neglect, and whether there exist other persuasive reasons (such as prejudice to the non-moving party) not to reopen discovery." *Romans v. Ford Motor Co.*, No. 2:16-CV-68, 2021 WL 1438299, at *2 (S.D. Ohio Apr. 16, 2021) (citing *Brock v. Harrison*, No. 2:14-cv-0323, 2015 WL 6561723, at *1 (S.D. Ohio Oct. 20, 2015)); *see also Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377 (6th Cir. 2009). "The Sixth Circuit has emphasized that the overarching inquiry in these overlapping factors is whether the moving party was diligent while discovery was ongoing." *Romans*, 2021 WL 1438299, at *2 (quoting *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014)) (internal quotation marks omitted). And, as explained below, the EEOC has additional burdens to satisfy because it seeks discovery beyond what the Federal Rules of Civil Procedure permit without leave of court.

**A.      Chambers Deposition**

In its first request, the EEOC seeks to reopen Jackie Chambers's deposition. Ms. Chambers is a Human Resources Manager at OSU. She put together the approval package supporting Mr. Knox's termination as a Human Resources Generalist (HRG) and later was involved in promoting Ms. Langese to an HRG position. (Docs. 27 at 3, 29-1 at 18). The EEOC already has deposed Ms. Chambers and its questioning focused, in part, on her role in drafting or signing a letter dated April 12, 2018. (Doc. 29-2 at 155–63). The letter "provide[s] justification for the position title change, updated duties and responsibilities, and change in pay for Jennifer Langese." (Doc. 29-7, Exhibit 75). It goes on to discuss "[r]ecent changes in the areas of HR support," and Ms. Langese's

ability to perform in the HRG role. (*Id.*). During her deposition, Ms. Chambers repeatedly testified that she had no recollection of the letter. (Doc. 29-2 at 155–63). Believing the letter had great significance, the EEOC sought the native version of the document, which OSU produced on October 4, 2021. (Doc. 27 at 4). The native version ostensibly identifies Ms. Chambers as the letter's creator and editor. (*Id.*). Because the EEOC now has a firmer reason to believe that Ms. Chambers drafted the letter, it wants another chance to question her. The EEOC estimates that two additional hours are needed for the deposition.

Yet, a deposition is limited to "1 day of 7 hours" unless otherwise "ordered by the court." FED. R. CIV. P. 30(d)(1). Ms. Chambers' deposition lasted for nearly seven hours, and it is estimated that only twenty minutes are left in the seven-hour allotment. (Docs. 32 at 12, 27 at 4). Additional time, consistent with Rule 26(b)(1) and (2), is granted only "if needed to fairly examine the deponent." *Id.* Factors to be considered include:

> Whether the additional testimony is proportional to the needs of the case, considering the importance of the issues at stake in the action; the amount in controversy; the parties' relative access to relevant information; the parties' resources; the importance of the discovery in resolving the issues; and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Cole v. Coverstone*, No. 2:20-CV-829, 2021 WL 612473, at *2 (S.D. Ohio Feb. 17, 2021) (citing FED. R. CIV. P. 30(d)(1), FED. R. CIV. P. 26(b)(1)).

Applying the factors here, reconvening the deposition is appropriate but not for two hours. OSU is willing to allow Ms. Chambers to be deposed on the limited issue of the native version of the letter, for an additional thirty minutes. (Doc. 32 at 12). That amount of time is more appropriate. This is so for several reasons, but, most importantly, the EEOC already had access to a version of the letter and extensively questioned Ms. Chambers about it:

Q: This [Exhibit 75] is a letter you wrote April 12th, 2018. What was the purpose of you drafting it?
A: I do not recall.
Q: It's addressed To Whom it May Concern Who was this written to?
A: I do not remember.
Q: But you did sign it at the bottom, didn't you?
A: My name is typed there.
Q: Okay. Can you go to the second sentence? It says, "Since Jennifer's hire in 2017, she's brought her work experience as a HR Generalist to the forefront of the HR Specialist team to improve upon the support offered in the process of completion." What's the purpose of you mentioning her HR Specialist experience there?
A: I don't recall. I don't recall what I wrote this memo for, and I don't -- I don't know. I can't answer your question.
Q: Well, so this memo is dated April 12th, 2018. You did write it, correct?
A: I do not recall this memo, or this letter.
[Pull up Exhibit 87][]
Q: Ms. Chambers, this letter to Jennifer Lagnese is dated April 16th, 2018, only four days after the memo in Exhibit 75. Could the memo in Exhibit 75 possibly have been written to justify Jennifer Lagnese's promotion to Senior HR --Senior Human Resources Specialist?
A: No.
Q: What makes you say that that's not possible?
A: Because I would never address it To Whom it May Concern.
Q: Let's go back to Exhibit 75. The first sentence of the letter says, "This letter is to provide justification for the position title change, updated duties and responsibilities, and change in pay for Jennifer Lagnese." Are you telling me that this letter wasn't submitted to justify Jennifer Lagnese's promotion to Senior HR Specialist?
A: I do not recall this letter, this memo. I do not recall writing it.
Q: Who else could have written it?
A: I don't know.[]
Q: Is this April 12, 2018 letter that justification?
A: What are you speaking of?
[Pull up Exhibit 75][]
Q: Ms. Chambers, this letter says it's the justification for the position title change. It is, isn't it?
A: No, it is not.[]
Q: Are you aware of instances in EHE where staff members drafted a memo and put their supervisor's name on it?
A: No, I am not aware.
Q: So what do you think -- how do you think this memo came into existence?[]

4

> A: I don't -- I do not know how this memo or letter came into existence. I do not write To Whom it May Concern.
> Q: Do you think somebody wrote this memo to get you in trouble in some way?[]
> A: I do not know what this memo was for. []
> Q: You're telling me you didn't write this? []
> A: I do not recall this memo, and I cannot recall or tell you that I wrote it. I do not remember it. []
> Q: Let's go back to Exhibit 75. Did Jennifer Lagnese write this memo?
> A: I do not know who wrote this memo. I don't remember this memo.
> Q: Did anyone forward you this memo telling you that this is what you should use to approve Jennifer Lagnese's promotion to Senior HR Specialist?
> A: I do not know where this memo came from. I do not recall writing it.

(Doc. 29-2 at 155–63) (questioning by John Brubaker, EEOC lawyer, answers by Ms. Chambers) (objections omitted).

Two additional hours would be burdensome and costly when compared to the likely benefit gained from questioning Ms. Chambers on the limited amount of new information obtained. Instead, OSU's offer of a thirty-minute deposition is more proportional to what needs to be explored here—namely, authorship of the letter. (Doc. 32 at 12). Accordingly, the Court **DENIES** the EEOC's request for two additional deposition hours, but **GRANTS** leave to reopen Ms. Chambers' deposition for thirty (30) minutes. During the reconvened deposition, the EEOC must limit questioning to the April 12, 2018 letter and, as discussed below, the grant funding at issue in Interrogatory 21.

Given this analysis, the EEOC also has shown good cause to reopen discovery for this limited purpose. *See* FED. R. CIV. P. 16(b)(4).

**B.      Interrogatory 21**

The next area of dispute concerns the EEOC's Interrogatory 21, which was propounded to OSU in August 2021. (Doc. 32 at 10). OSU objected to the request on September 30, 2021, asserting, in part, that the multipart request put the EEOC beyond its interrogatory limit under FED. R. CIV. P. 33(a)(1). (Doc. 32-2). Interrogatory 21 requests a list of "all grants and/or project funding that provided funding for the Crane Center for Early Childhood Research ("CCEC"), and the Schoenbaum Family Center ("SFC") from January 1, 2013, through the present." And then goes on to request the following about each grant:

> a. the working title or name,
> b. the sponsor or funding source,
> c. the date the grant or project was applied for,
> d. the monetary amount applied for,
> e. the date the grant or project was approved or denied, in whole or in part,
> f. the date and amount of each installment of money received; or for future installments yet to be paid out, the monetary amount(s) and date(s) that the money is scheduled to be received,
> g. whether the grant or project was new or a renewal,
> h. whether the grant or project funding was a component of the $1,770,324 of new project funding that Jacqulyn Ms. Chambers represented to Kristi Hoge was received in SFC/CCEC from March of 2018 through December 27, 2018.

(*Id.*).

The EEOC did not move to compel, nor did it alert the Court of the potential discovery dispute. Now, the EEOC wants discovery reopened to confer more about the interrogatory request. (Doc. 27 at 7 (arguing that "conferral over Interrogatory No. 21 also necessitates an extended discovery period")). OSU responds that "[the EEOC] has failed to demonstrate good cause to re-open discovery to allow it to seek to compel OSU to respond to Interrogatory no. 21, especially because [the EEOC] rejected OSU's proposed reasonable compromise for a response to this interrogatory." (Doc. 32 at 11). OSU proposed to give "two spreadsheets, one would show a grant

6

number, an application date and amount requested. The second would show a grant number, an award date and amount awarded. The information at this point does not show new or renewal grants." (Doc. 32-3).

The EEOC argues for extension as it relates to Interrogatory 21 to allow more time to confer. (Doc. 27 at 7). While the EEOC did not alert the Court to this potential issue before the end of discovery, it did seek to resolve the issues in the waning days of discovery with defense counsel. (Doc. 32-3). The spreadsheets OSU proposed to give included a substantial portion of the information requested—excluding information from 2013–2015, new or renewed grant status, and the relationship of the grants to the new project funding. Given that discovery has closed, and that OSU's previous compromise addressed the bulk of Plaintiff's questions, the Court **ORDERS** OSU to provide the EEOC with the aforementioned spreadsheets (Doc. 32-3) within seven (7) days of the date of this Order. Additionally, the EEOC may question Ms. Chambers, during the reopened deposition, about the grant process, mainly the representation she made to Ms. Hoge about the $1,770,324 of new project funding.

But the Court **DENIES** Plaintiff's request to reopen discovery in order to "confer" over Interrogatory 21. The Court sees minimal value in allowing open-ended exploration of grant funding for a several year period, especially given that discovery in this case has been ongoing for a year. Said differently, the EEOC has not shown good cause for this request. *See* FED. R. CIV. P. 16(b)(4).

### C. Eleventh Deposition

In its final request, the EEOC asks for leave for an eleventh deposition. (Doc. 27 at 1). The EEOC wants to depose Jonathan Parry for four-hours. Mr. Parry is an Employee and Labor Relations Consultant in OSU's central human resources department. (*Id.* at 5).

7

To take an eleventh deposition after the close of discovery, the EEOC has two hurdles to overcome. First, because the EEOC seeks to reopen discovery, it must satisfy Rule 16(b)(4). Second, the EEOC has already taken ten depositions in this case. To take more, "[a] party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)." FED. R. CIV. P. 30(a)(2)(A)(i). Rule 26(b) factors for weighing proportionality include the importance of the issues, parties' access to relevant information, parties' resources, and weighing the burden against the benefit of the proposed discovery. FED. R. CIV. P. 26(b)(1). Thus, the EEOC must show both good cause and proportionality.

At base, the EEOC argues that it must depose Mr. Parry because he was a decisionmaker regarding Mr. Knox's termination and Ms. Langese's promotion. And, says the EEOC, this revelation came to light only recently when certain emails were produced. The EEOC represents that before the production of the emails, "Mr. Parry's involvement in Mr. Knox's termination and Ms. Langese's promotions appeared to be minimal, as merely signing off on the [] personnel decisions[.]" (Doc. 27 at 6–7). But, says the EEOC, these emails "[make] clear the significance of [Mr. Parry's] participation in the events leading to this action." (*Id.* at n.6). OSU responds that the EEOC "knew for at least 8 months that Parry's role was to 'review and approve' both the Knox [reduction in force ("RIF")] and the Lagnese reclassification." (Doc. 32 at 9). In other words, OSU argues that the new emails show nothing new at all.

The first batch of new emails are exchanges between Ms. Chambers and Mr. Parry. (Doc. 27-1, Exhibit E). Ms. Chambers tells Mr. Parry that Mr. Knox was "RIF'd" due to a decrease in volume. She goes on to say that "[s]ince then, the volume has increased . . . because of additional grants and sponsored projects therefore needing an HRG [position]. . . ." (*Id.*). Ms. Chambers then writes, "we have decided to promote Jennifer Langese into the HRG position to support

8

[various centers] as well as being responsible for Project Management for the HR Team." (*Id.*). Mr. Parry asks whether a change in the volume of work can be documented, showing what changed in the few months since the HRG position was abolished for lack of work and then reinstated due to quantity of work. (*Id.*). Ms. Chambers then sends Mr. Parry supporting documentation of the change in HRA volume. (*Id.*). Mr. Parry asks about the FTE volume as a justification for abolishing Mr. Knox's role. (*Id.*). Ms. Chambers then sends him FTE volume changes. (*Id.*). HRA and FTE volume are "two metrics Defendant uses to measure workload[.]" (Doc. 27 at 6). The EEOC says these emails changed its thinking about Mr. Parry's involvement in the termination and promotion decisions at issue, and because of Mr. Parry's important role, he needs to be deposed.

The second batch of new emails are mostly between Ms. Hoge and Mr. Parry. (Doc. 27-1). Ms. Hoge is an Employee Relations Manager at OSU who investigated Mr. Knox's internal discrimination complaint. (Doc. 27 at 5). In one of the emails, Mr. Parry says:

> Bryan had talked with me a couple times about programs at CETE "winding down," and I have some personal notes from a conversation with him on 10/5/17 in which Bryan said the Dean was evaluating the various centers of the college. During that conversation, Bryan said it was likely that Al's position would be abolished in the future because of the decreasing workload.

(Doc. 27-1, Exhibit F).

After receiving the email, the EEOC requested the "personal notes" that Mr. Parry mentions because they seemingly relate to the decision to abolish Mr. Knox's position. (Docs. 27 at 6, 27-1, Exhibit E). Yet, after an "extensive search," the notes have not been found, and OSU believes the notes "no longer exist." (Doc. 32 at 4). Unsurprisingly, the EEOC believes Mr. Parry ought to be deposed about the missing notes.

9

Upon review of the new emails, the Court finds that the EEOC has met its burden to reopen discovery in order to depose Mr. Parry. Good cause is shown because the EEOC was not neglectful during discovery; instead, the documents supporting the decision to depose Mr. Parry were only recently produced. *See Romans*, 2021 WL 1438299, at *2 (citing *Brock*, 2015 WL 6561723, at *1); *see also* FED. R. CIV. P. 16(b)(4). Additionally, the prejudice to OSU is limited because the dispositive motions deadline is currently stayed (Doc. 25), and discovery only recently closed (Doc. 15). *Id.*

Likewise, the EEOC has also shown that a short deposition of Mr. Parry is proportional to the needs of this case—even though the EEOC already has taken ten depositions in this matter. *See* FED. R. CIV. P. 30(a)(2)(A)(i). The EEOC only recently gained access to the relevant emails, which shed a new light on Mr. Parry's involvement in issues central to this case. His deposition would give the EEOC the benefit of exploring Mr. Parry's role and thought processes. The Court acknowledges the costs associated for OSU in having Mr. Parry's deposition proceed and accordingly limits the deposition to two hours. Further, the Court expects this to be the end of the discovery road for the parties. As OSU has noted, it has already spent nearly $100,000 on discovery in this case. (Doc. 32 at 2). So, other than the discovery permitted by the Opinion and Order and Mr. Knox's deposition, the Court anticipates no further discovery.

In sum, the Court **GRANTS in part** the EEOC's request for an eleventh deposition. Specifically, the Court **GRANTS** leave to conduct a two-hour deposition of Mr. Parry.

### III. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** the EEOC's Motion to Amend/Correct Preliminary Pretrial Order (Doc. 26). The Court **GRANTS** leave to conduct a thirty-minute deposition of Ms. Chambers limited to questions regarding the April 12, 2018 letter,

10

and the grants at issue in Interrogatory 21. The Court **GRANTS** leave to conduct a two-hour deposition of Mr. Parry. The Court **ORDERS** OSU to produce the spreadsheets responsive to Interrogatory 21 that were mentioned in the emails between the attorneys (Doc. 32-3) within seven (7) days of the date of this Order. This discovery must be concluded by **November 22, 2021**.

    IT IS SO ORDERED.

Date:  October 22, 2021                        /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE