IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNIY COMMISSION, | : :  : |
| Plaintiff, | : Case No. 2:20-cv-04624 : |
| v. | : CHIEF JUDGE ALGENON L. MARBLEY : |
|  | : Magistrate Judge Jolson |
| THE OHIO STATE UNIVERSITY, | : : |
| Defendant. | : |

## OPINION & ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment. (ECF No. 53). For the following reasons, this Court **DENIES** Defendant's Motion (*Id.*).

### I. BACKGROUND

#### A. Facts

Alan Knox worked as a Human Resources Generalist ("HRG") within the College of Education and Human Ecology ("EHE") at the Ohio State University ("OSU") until his termination in 2018. (ECF No. 58 at 10). Knox worked at EHE for 12 years and had amassed over twenty years of experience at the time of his termination. In his role as HRG, he supported the Schoenbaum Family Center ("SFC"), the Crane Center for Early Childhood ("CCEC") and the Center on Education and Training for Employment ("CETE"). At the time of Knox's dismissal, Defendant alleges that CETE was experiencing significant changes in response to less favorable funding environment. Because the Center did not receive any regular University funds, it was required to look externally for financial support, in the form of grants, sponsored projects, and other sources.

Following the College's retention of outside experts to perform a program review of the College, OSU implemented the experts' recommendations. Among them, the College merged the Center on Education and Training for Employment ("CETE") with Educational Studies ("Ed Studies") and replaced its administrative director with a faculty member. The purpose of the changes was to realign CETE with the overall vision and operational direction of the College. The merger was complete by February 2018. OSU allegedly replaced Knox—the-then oldest HRG in the college at 52 years—with 27-year-old Jennifer Lagnese later that year. (*Id.*). Knox asserts that OSU's given reason for his termination—that the workload could no longer justify his position—was a pretext for unlawful age discrimination.

Following his termination, Knox applied for eight open positions at OSU. At various stages, Knox's application was rejected by his former employer. Though initially Knox challenged each of these rejections as an actionable claim of age discrimination, EEOC abandons all but one claim. That claim asserts that EHE failed to hire him in violation of the federal age discrimination statute. Knox soon filed a charge of age-based discrimination with EEOC, and EEOC filed this suit.

## B. Procedural

On September 3, 2020, Plaintiff filed its Complaint against Defendant asserting a claim of unlawful age discrimination under Section 7(b) of the ADEA, 29 U.S.C. § 6262(b). (ECF No. 1). Plaintiff seeks both equitable and legal relief. Specifically, Plaintiff requests a permanent injunction against Defendant and all those in active concert from engaging in employment practices that discriminate on the basis of age; an order for Defendant to institute and carry out policies, practices, and programs which provide equal opportunities for those 40 and older; order Defendant to pay back wages, inclusive of benefits, and an equal amount in liquidated damages to

Knox; and provide Knox with reinstatement or front pay. Finally, Plaintiff seeks the cost of this action.

The Defendant filed its Motion for Summary Judgment (ECF No. 53) and Plaintiff timely filed its Response in Opposition (ECF No. 58) to which Defendant timely filed its Reply (ECF No. 61). This matter is now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

### III. LAW & ANALYSIS

The Defendant seeks summary judgment on each of Plaintiff's existing claims of Age Discrimination: one based on termination and the other based on the Defendant's failure to hire. With regard to the first claim, Defendant offers four reasons for such a result: (1) the Plaintiff failed to plead a prima facie case; (2) the Defendant had a legitimate, non-discriminatory reason for the employment action; (3) the Reduction in Force program was not a pretext for Age Discrimination; and (4) the reclassification of the position of Plaintiff's replacement was not discriminatory.  For the second claim, Defendant argues that its refusal to hire Plaintiff was not discriminatory.

Plaintiff asserts that for both of its claims it can establish its prima facie case and demonstrate that Defendant's proffered reason is pretextual. The Court considers each request for summary judgment in turn beginning with its claim based upon termination.

### A. Termination

4

*1. Prima Facie Case*

Defendant argues that Plaintiff cannot establish a prima facie case. Defendant does not dispute that Plaintiff is a member of a protected class, that it discharged Knox, or that he was qualified for his position. Instead, it asserts that because Knox was neither replaced by someone outside of his protected class nor singled out for an impermissible reason, Plaintiff cannot make its prima facie case. Accordingly, it believes that it should be granted summary judgment.

Plaintiff responds by arguing that it can establish its prima facie case in either of the two available ways: (1) by demonstrating that a significantly younger employee replaced Knox; or (2) that Knox was terminated as part of a RIF and there is additional probative evidence of age discrimination.

The ADEA makes it illegal to discharge "an employee 'because of' her age." *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 526 (6th Cir. 2021) (citing 29 U.S.C. § 623(a)(1)). In the absence of direct evidence, the Sixth Circuit employs the *McDonnell Douglas* burden-shifting framework when evaluating such claims. Under that paradigm, the plaintiff bears the burden of establishing a prima facie case. To do so, the plaintiff must show "by a preponderance of the evidence that[]

> (1) he was at least 40 years of age at the time of the alleged discrimination ("a member of a protected class");
> (2) he was subjected to adverse employment action;
> (3) he was qualified for the position; and
> (4) he was replaced by a younger person."

*Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994) (citing *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir.), *cert. denied*, 506 U.S. 940 (1992)). The fourth prong is satisfied when the person being "replaced by a younger individual" is significantly older. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)).

When "an employee is terminated as part of a reduction in force, the employee must meet a heightened standard to prove his prima facie case." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536–37 (6th Cir. 2014) (citing *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)). Under such circumstances, "[h]e must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [him] out … for discharge for impermissible reasons." *Id.* (quoting *Barnes*, 896 F.2d at 1465); *Thompson*, 985 F.3d at 522.

As a threshold matter, the parties disagree on whether Knox was terminated as part of a reduction in force (RIF). (*Compare* ECF No. 53 at 31 *with* ECF No. 58 at 46). Defendant contends that Knox was eliminated pursuant to a RIF, so the heightened prima facie case requirement should apply. Plaintiff asserts that Defendant terminated then replaced Knox as opposed to eliminating his position as a part of a valid RIF. Consequently, Plaintiff argues, this would trigger the original prima facie case requirement. Either way, however, Plaintiff contends it can establish a prima facie case. (ECF No. 58 at 49).

The Sixth Circuit has distinguished between circumstances when an employee is replaced by a younger worker as opposed to an elimination as a part of a RIF. In *Barnes* that Court held:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465 (6th Cir. 1990) (citing *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980)). "An employer 'replaces' a discharged employee when it reassigns an existing employee to assume the discharged employee's duties in a way that fundamentally changes the

nature of his employment." *Brown v. Queen City Supply Co.*, No. 1:19-CV-674, 2021 WL 2635168, at *10 (S.D. Ohio June 25, 2021) (quoting *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 537 (6th Cir. 2014)). But "when the former duties were assumed by [a younger employee], who performed them in addition to his other functions," the former's employee's job was eliminated. *Pierson*, 749 F.3d at 537 (citing *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir.1980); *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 726 (6th Cir.2012); and *Geiger*, 579 F.3d at 623).

The Court will address these arguments in turn.

Plaintiff "has identified record evidence that supports the inference that his position was not truly eliminated, but was instead filled after his departure by" Lagnese. *Pierson*, 749 F.3d at 537. First, it is undisputed by the parties that Lagnese took on at least some of Knox's duties. (ECF No. 53 at 8); (ECF No. 58 at 47). Instead, the parties differ on how much of Knox's duties Lagnese assumed. According to documentary evidence, "Lagnese took over [Knox's] SFC and CCEC assignment," which Defendant represented as the majority of Knox's workload. (*See* ECF No. 58-50 at 3–4); (ECF No. 58 at 47) (In response to an email from the Defendant's central HR, Jacqulyn Chambers stated that Lagnese "will be handling SFC and CCEC."). Moreover, just after Knox was terminated, Chambers sent an email stating that "[r]ecent changes in the areas of HR support in the College … has enabled Jennifer to step up and demonstrate her ability to perform strategic front-line services as an HR Generalist for the SFC/CCEC department." (ECF No. 58-44 at 2). Similarly, her SFC/CCEC assignment made up approximately 80% of her workload and grew "to the point that [she was then] located in the SFC/CCEC facility … and ha[d] a direct reporting line to the … Executive Director." (ECF No. 58-49 at 4). Notably, Knox was the HRG for the SFC/CCEC departments at the time of his termination.

7

And though Lagnese was initially promoted to Senior Human Resources Specialist—purportedly to reflect the additional volume of work she would be assuming—within six months this position was "reclassified" to Human Resources Generalist. (ECF No. 58-50 at 3–4). So, in addition to sharing many of the same job duties as Knox, now Lagnese assumed the same title as Knox at the time of his termination.

This mirrors the facts in *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 537 (6th Cir. 2014). There, the plaintiff was able to show some evidence that his day-to-day schedule and responsibilities changed, much like Lagnese; the *Pierson* Court also found it probative that the younger employee's workload—just like Lagnese's—began to approximate that of the employee he replaced. *Id.* at 537. Though the younger employee retained *some* of his initial job duties, the majority of his time eventually "was diverted to managing" his predecessor's old workload. The same occurred here. Additionally, Defendant's position that Lagnese retained her prior workload, added project management duties and added some of Knox's responsibilities is undermined by the fact that HRG's were generally required to perform project management duties. While Defendant rests on this attribute as differentiating Lagnese's job tasks from Knox, it appears that it was uncontroversial that HRG's performed such tasks. Finally, *Pierson* found it probative a younger employee assumed the title of his predecessor and position with the firm's internal reporting structure. As Lagnese assumed Knox's role and title, the same can be said here.

There is also, however, evidence that supports a Reduction in Force theory. This view of the facts would require that whomever picked up Knox's job duties would also retain many of her existing responsibilities. Because Lagnese worked as a Human Resources Specialist that supported Knox and thus supported Knox's workload at the time of his termination, it is unsurprising that many of their job duties overlapped or were, at least, closely related.

8

Additionally, Defendant resists the assertion that Lagnese initially took over Knox's duties. Instead, it urges that Knox's responsibilities were initially split between Jackie Chambers and Jodie Renshaw—two Human Resources employees within the protected class (*i.e.*, over 40). Chambers and Lenzo both offer testimony to support this assertion. This evidence, however, is contradicted by the fact that Chambers stated she was at capacity two months prior to Knox's termination when she was promoted to HR Manager. (*See* ECF No. 58-4) ("Q. At this point when you were promoted to HR Manager, were you at capacity as far as your volume of work? A. Yes. I can always do more.").

Plaintiff has provided sufficient evidence for a reasonable jury to conclude that Lagnese did not retain each of Knox's prior job duties and that she was effectively reassigned to replace him as HRG. Because Plaintiff has offered "evidence from which a reasonable jury could conclude that [Lagnese], who was [twenty-seven] years old, replaced" Knox as Human Resources Generalist, Plaintiff has "provided evidence to establish [its] prima facie case of age discrimination." *Id.* at 539. This is sufficient to preclude Summary Judgment on the issue of whether Plaintiff can establish a prima facie case.

### 2. Pretext

Having found that Plaintiff can establish a prima facie case of discrimination, "the burden shifts to [Defendant] to set forth a legitimate, nondiscriminatory reason for terminating" Knox. *Pierson*, 749 F.3d at 539. Defendant meets its burden by asserting that it eliminated Knox's position pursuant to a College-wide assessment of its organizational structure and its component organizations, like CETE. (ECF No. 53 at 7). Defendant engaged third-party experts to review its Center for Education and Training in Employment which resulted in the recommendation that CETE be more oriented to the College's goals and objectives. (*Id.*). This overarching

recommendation suggested the replacement of CETE's director with a College faculty member and the merger of that organization with another center called Educational Studies. (*Id.*). This recommendation was adopted by the College, resulted in the replacement of CETE's director, and consequently resulted in the elimination of Knox's position that supported that Center. (*Id.*).

Accordingly, the burden shifts back to Plaintiff. To "refute this legitimate, nondiscriminatory justification[, Plaintiff may show] that it '(1) has no basis in fact, (2) did not actually motivate [Defendant's] challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Flowers v. WestRock Servs., Inc.*, 979 F.3d 1127, 1133 (6th Cir. 2020) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)). Plaintiff argues that Defendant's stated reason was pretextual for three reasons: (1) a reduction in force did not occur; (2) if it did, the factor motivating the RIF—the outside expert report—did not recommend eliminating his position; and (3) the Defendant proffered shifting justifications.

Here, the Court finds that shifting justifications proffered by the employer is enough to create a genuine issue of material fact to preclude summary judgment. Defendant's Request for Reduction in Work Form ("RIF form" or "form") has a subsection that states, "Reduction in Work Force due to" and four check boxes identifying justifications. (ECF No. 58-37 at 3). These justifications include: "Reasons of economy, Lack of work, Reorganization for efficiency, and Lack of funds." (*Id.*); (*see also* Figure 1 below).

Reduction in Work Force due to:
☐ Reasons of economy  ☐ Lack of work  ☒ Reorganization for efficiency  ☐ Lack of funds

Figure 1

On this form, Defendant memorialized internally that a RIF was necessary "due to a [r]eorganization for efficiency," and then represented to Knox that "***due to a lack of work*** and the

10

restructuring of CETE" his position needed to be abolished.  (*Compare* ECF No. 58-37 *and* 58-40) (emphasis added).  When Defendant submitted its "Request for Reduction in Work Force" form to its central Human Resources department, it had the opportunity to identify its proffered reason clearly.  It chose "reorganization for efficiency," focused its narrative explanation on the reorganization of CETE, and concluded by saying that the because of the reorganization "the need for the above position" was eliminated absent further explanation. (ECF No. 51-2 at 16–17). Notably, Defendant could have selected "lack of work," which is an additional reason it articulated in its termination letter to Knox.   Defendant's Counsel attempted to resolve this inconsistency in oral argument by representing that only one box could be checked on Defendant's internal RIF form (*i.e.*, either "lack of work" or "reorganization for efficiency," but not both).  But because she neither pointed to record evidence when making this assertion nor is competent to testify as a fact witness on behalf of her client, this is, at best, neutral in terms of advancing Defendant's argument. Moreover, available record evidence does not support Counsel's assertion.  Specifically, a representative from OSU's Central HR, someone who would likely know the mechanics of this form, when asked, "Can you tell me why the box for lack of work is not checked in his reduction in force?" answered "I don't know."  (ECF No. 44-1 at 41, J. Parry Dep. 41:10-41:12).

Other than Counsel's above representations at oral argument, Defendant has failed to proffer reasons why it was prevented from being either clear or complete on its own RIF form. And to the extent Defendant was unable to select more than one check box justification on this form, its narrative section provided them an additional opportunity to resolve any issues regarding ambiguity or incompleteness.  (*See* Figure 2 below).  Despite there being significant space provided, Defendant chose to provide little additional detail.  (*See* 58-37 at 3).  It simply reasserted in narrative form the check box selected above, noting that CETE was undergoing a reorganization

and because of that reorganization Knox's position was no longer needed. (*Id.*). In addition to being incomplete on this issue, this proffered narrative does not seem to comply with the instructions of its own form. There, the RIF form instructs users to be detailed and precise stating, "**Reasons for Position Abolishment** (Please provide *specific* reasons for the reduction in work force, including why the position is targeted for abolishment, *how the duties of the position will be reassigned* and *why this particular position was selected*)." (*Id.*) (emphasis added). Though it could have easily avoided these issues by simply referring to a lack of work in the narrative section of its own form, it chose, at its own peril, to be terse in its explanation. Considering the record evidence presented, the form omits the second justification for Knox's RIF (*i.e.*, lack of work) and paired with Knox's termination letter, creates a genuine dispute of material fact.



Figure 2

Again, this is similar to *Pierson*. 749 F.3d at 541. There, the court found that the employer's shifting justifications for terminating its employee between performance and the elimination of the position without hardship to the company created a genuine issue of material fact. The decision maker initially identified the "hardship" reasoning, then subsequently mentioned performance issues. The Sixth Circuit recognized that "[a]lthough it is possible that

[the employer] had [the employee's] allegedly poor teamwork in mind when he initially selected him for termination, and that both reasons played a role in [the employee's] discharge, a reasonable jury could conclude that [the employer] shifted the reasons for his decision over time." *Id.* The same is true here. Though lack of work could have been on the employer's mind when articulating its "reorganization for efficiency" justification, it did not say as much. Instead, Defendant offers post-hoc rationalizations generously to interpret its two-sentence justification that harmonizes its internal RIF form with Knox's termination letter. Because "[s]uch shifting justifications raise an inference that the proffered reasons are false and are pretext for discrimination," the Defendant's Motion for Summary Judgment on Plaintiff's claim based on termination is **DENIED**.

### B. Failure to Hire

Defendant notes that Plaintiff abandoned seven of its eight claims alleging age discrimination based upon a failure to rehire. Defendant asserts that it should be granted summary judgment on the sole remaining claim because Plaintiff can neither establish a prima facie case nor show that Defendant's proffered reason for its failure to hire Knox was pretextual. Plaintiff opposes each ground.

Failure to hire cases are analyzed under the same *McDonnell Douglas* burden shifting test as a discriminatory discharge claim under the ADEA. *See George v. Youngstown State Univ.*, 966 F.3d 446, 470 (6th Cir. 2020). The test is modified in failure to hire cases, requiring "the plaintiff [to] show that, after she was rejected, the employer either (1) filled the position with someone outside of the plaintiff's protected class (or, for the ADEA, with a substantially younger person), or (2) kept the position open and continued to seek other applicants." *Id.* (6th Cir. 2020) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310–13 (1996); *McDonnell Douglas*, 411 U.S. at 802; *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464 (6th Cir. 1990)).

Plaintiffs may "satisfy the qualification prong of her prima facie case "by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575–76 (6th Cir. 2003) (en banc).  Indeed, "[a]lthough the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.

To the extent the Defendant disputes Knox's qualifications for an HRG position, Plaintiff "met [its] burden in showing [Knox] was qualified for the position, as a reasonable juror could find that" he had the requisite "education, experience in the relevant industry, and demonstrated possession of the required general skills." *George*, 966 F.3d at 457; *Wexler*, 317 F.3d at 576.  The strongest evidence for Knox's qualification for the open position, of course, is the fact that he worked in as an HRG—a role with the same title, in the same College—quite recently.  Thus, his twenty years' experience in HR, 12 of which was spent with Defendant undermines any contrary arguments concerning Plaintiff's prima facie case.

Having again established its prima facie case, the burden shifts to Defendant to provide a legitimate, non-discriminatory reason.  Defendant's articulated that it did not hire Knox because of his "performance in his telephone screening interview." (ECF No. 58 at 72).  In a failure to hire case, pretext may be demonstrated via the "relative-qualifications test." *Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 WL 203327, at *5 (6th Cir. Jan. 24, 2022) (*Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006)).  To survive summary judgment under the relative-qualifications test, [Plaintiff] must present evidence demonstrating that either: (1) [Knox] was the "plainly superior candidate, such that no reasonable employer would have chosen the latter

14

applicant over the former;" or (2) [Knox] "was as qualified as if not better qualified" than [the hired employee] and the record contains "other probative evidence of discrimination." *Id.* (citing *Bender*, 455 F.3d at 627; and *Provenzano*, 663 F.3d at 815.

Though Plaintiff asserts that he is the "plainly superior candidate," "the Sixth Circuit has created an exceptionally high standard for satisfying the burden of proving a plaintiff is the plainly superior candidate." *Aday*, 2022 WL 203327, at *6. The Court need not address that argument because Plaintiff also maintains that he can show pretext via an alternate route—namely by demonstrating he was just as qualified and by proffering other evidence of discriminatory animus.

In light of Knox's qualifications above, he has demonstrated that a reasonable jury could find that he is at least as qualified as the successful candidate. He had twice as much HR experience, worked in the College as an HRG, and had experience with the specific technology the College's HR team used. (ECF No. 58 at 71–72). To survive summary judgment, Plaintiff would need to show that the record contains other probative evidence of discrimination.

Comments by an employer that suggest discriminatory animus can create a genuine dispute such that a denial of summary judgment is warranted. *Aday*, 2022 WL 203327, at *11. And while "a jury may wholly reject Plaintiff's account of these events and find Defendant['s] evidence more credible[,] … [a]t the summary judgment stage, … courts are not to weigh the credibility of the parties' evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Instead, the inquiry "is simply whether the parties have proffered enough evidence to create a genuine dispute, such that a reasonable jury could find in the non-movant's favor." *Id.*

Here, Plaintiff has done just that. When asked in his deposition if it is "an example of age bias to assume that an older worker would not be able to understand technology," hiring manager Adam Daniels answered, "No." (ECF No 58 at 74). Moreover, Daniels described the successful

15

candidate as the "closest clone" to the person who previously occupied that role. Importantly, that person was 31-years old. Similar to *Aday*, though each comment on its own may not be sufficient to create a genuine dispute of material fact, the two in aggregate from the same hiring manager is sufficient probative evidence of discrimination to overcome summary judgment.

Accordingly, the Defendant's Motion for Summary Judgment on Plaintiff's failure to hire claim is **DENIED**.

### IV.     CONCLUSION

For the reasons more fully stated above, this Court **DENIES** Defendant's Motion for Summary Judgment (*Id* ).

**IT IS SO ORDERED.**

                                                          _____
                                                          **ALGENON L. MARBLEY**
                                                          **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 21, 2022**