**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | : | |
| **OPPORTUNITY COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:20-cv-04624** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **THE OHIO STATE UNIVERSITY,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

## I.     INTRODUCTION

This matter is before the Court on the parties' Motions in Limine (ECF Nos. 72, 73, 83, 84, 85, 90, 91, 92, 93, 96, 97, 98) in advance of trial, which is set to begin on February 27, 2023. Also before the Court is Plaintiff EEOC's Motion to Strike (ECF No. 120). For the reasons set forth below, EEOC's Motions to Exclude (ECF Nos. 90, 91, 92, 97) are **GRANTED**. EEOC's Motions to Exclude (ECF No. 72, 73, 93) and OSU's Motion to Exclude (ECF No. 84) are **GRANTED IN PART and DENIED IN PART**. EEOC's Motion to Strike (ECF No. 120) is **DENIED IN PART and DENIED IN PART AS MOOT**. All remaining motions are **DENIED**.

## II.     BACKGROUND

This case arises out of allegations of employment discrimination, pursuant to the Age Discrimination in Employment Act ("ADEA"), against Defendant The Ohio State University ("OSU"). The factual background of this case has previously been set out in full detail in this Court's September 21, 2022, Opinion & Order, which denied OSU's Motion for Summary

1

Judgment.  (*See generally* ECF No. 66).  For the sake of clarity, the Court briefly restates the facts necessary for understanding the terminology and issues in the pending pretrial motions in limine.

Alan Knox worked as a Human Resources Generalist ("HRG") within the College of Education and Human Ecology (the "College" or "EHE") at OSU until his termination in 2018. As an HRG, Knox supported the Schoenbaum Family Center ("SFC"), the Crane Center for Early Childhood ("CCEC"), and the Center on Education and Training for Employment ("CETE").  At the time of Knox's dismissal, Defendant alleges that CETE was experiencing significant changes in response to a less favorable funding environment; the College had retained outside experts to perform a program review of the College.  In February 2018, Knox, who was, at 52 years old, the oldest HRG in the College at the time, was terminated by OSU.  EEOC alleges that the decision was spearheaded by Bryan Lenzo, the director of Human Resources ("HR"), and his second-in-command, Jacquelyn Chambers, whereas OSU claims that Knox was terminated incident to a reduction in force ("RIF") recommended by the consultants.

The U.S. Equal Employment Opportunity Commission ("EEOC") filed suit against OSU in September 2020, alleging that OSU discriminated against Knox in terminating him on account of his age.  This case is now set for trial starting on February 27, 2023.

### III.    STANDARD OF REVIEW

The purpose of a motion in limine is "to narrow the issues remaining for trial and to minimize disruptions at trial."  *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).  The decision to deny or "to grant a motion in limine falls within the sound discretion of the trial court."  *Delay v. Rosenthal Collins Grp., LLC*, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012)).  The

2

guiding principle is "to ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

The burden rests on the movant, *Morrison v. Stephenson*, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008), who must demonstrate to the Court that the evidence she seeks to exclude is "clearly inadmissible on all potential grounds." *Delay*, 2012 WL 5878873, at *2 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846). But "[u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Furthermore, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison*, 2008 WL 343176, at *1 ("Courts . . . are generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence." (internal quotation marks omitted)).

## IV. LAW & ANALYSIS

Plaintiff EEOC has submitted nine (9) Motions in Limine (ECF Nos. 72, 73, 90, 91, 92, 93, 96, 97, 98) and Defendant OSU has submitted three (3) (ECF Nos. 83, 84, 85). The Court will address these motions in turn, grouping matters that are thematically related where appropriate.

### A. Expert Witnesses (ECF Nos. 72, 83)

Each party has put forward an expert witness (also known as an opinion witness) to testify about the damages suffered by Alan Knox. Both parties have filed motions to exclude the

opposing expert witness.  (*See* ECF Nos. 72, 83).  The Court first sets out the legal principles of opinion witness testimony before evaluating the respective motions.

Federal Rule of Evidence 702, which governs the testimony of expert witnesses reads in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

This rule reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (citing Fed. R. Evid. 702 advisory committee's notes to 2000 amendments).  Together, Rule 702, *Daubert*, and *Kumho Tire* establish that district courts may admit proposed expert testimony only if it satisfies three requirements.  *Id.* at 528–29 (describing the district courts' responsibility "of acting as gatekeepers to exclude unreliable expert testimony").

First, "the witness must be qualified by 'knowledge, skill, experience, training, or education.'"  *Id.* at 529 (quoting FED. R. EVID. 702).  The Sixth Circuit "take[s] a liberal view of what 'knowledge, skill, experience, or training' is sufficient to satisfy [this] requirement."  *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2005) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)).  A witness's qualifications are not measured "in the abstract," but rather by determining "whether those qualifications provide a foundation for a witness to answer a specific question."  *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).  Relevant factors include, among other things, the length of the expert's experience in the field, *compare*

4

*United States v. Ledbetter*, 2016 WL 1019260, at *3 (S.D. Ohio March 15, 2016), *with U.S. v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000), whether she has previously been qualified by courts to testify as an expert, *see United States v. Norwood*, 16 F. Supp. 3d 848, 863 (E.D. Mich. 2014), and her education and training credentials as demonstrated through coursework, hours of formal training, and designations or certificates.  *See, e.g.*, *United States v. Coxcon-Chagal*, 886 F. Supp. 2d 1222, 1241 (D.N.M. 2012).

Second, the proposed testimony "must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *In re Scrap Metal*, 527 F.3d at 529 (quoting FED. R. EVID. 702).  The opinion testimony must "fit" the issue to be resolved at trial.  *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999).  Specific to the context of employment discrimination damages, the Sixth Circuit has held that issues of back pay "should ordinarily consist of lost salary, including anticipated raises, and fringe benefits."  *Howe v. City of Akron*, 801 F.3d 718, 746 (6th Cir. 2015) (citing *EEOC v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 174 F.3d 89, 101 (2d. Cir. 1998)).  An expert is not permitted, on the other hand, to testify as to the "ultimate issue" in a trial.  *Berry*, 25 F.3d at 1354 ("We would not allow a fingerprint expert . . . to opine that a defendant was guilty (a legal conclusion)," but would permit him to testify "that the defendant's fingerprint was the only one on the murder weapon (a fact).")

Third, "the testimony must be reliable."  *In re Scrap Metal*, 527 F.3d at 529; *see also Daubert*, 509 U.S. at 589 ("[U]nder the [Federal] Rules [of Evidence] the trial judge must ensure that any and all . . . testimony or evidence admitted is not only relevant, but reliable.").  The reliability requirement focuses on the methodology and principles underlying the testimony.  *Greenwell*, 184 F.3d at 496–97.  The Supreme Court has extended the factors for evaluating the

5

reliability of scientific expert testimony, first set forth in *Daubert* — that is, testing, peer review, error rates, and acceptance in the relevant scientific community — to other technical but non-scientific realms as well. *See Kumho Tire*, 526 U.S. at 141–42. The test of reliability, however, is "flexible" and the *Daubert* factors are "neither necessarily nor exclusively appli[cable] to all experts or in every case." *Id.* at 142. Ultimately, a district court is tasked not with assessing whether the expert's opinion is "correct, but rather to determin[ing] whether it rests upon a reliable foundation." *Little Hocking Water Ass'n, Inc.*, *v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746, 752 (S.D. Ohio 2015). And finally, where the proposed expert testimony is in dispute, "it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder." *Id.* at 752 (explaining that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction of the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (quoting *Daubert*, 509 U.S. at 596) (alteration in original)).

With respect to all three elements listed above, the proponent of the testimony must establish admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

### 1. Alex Constable

EEOC has moved to exclude the testimony and report of OSU's rebuttal expert, Mr. Alex Constable, on the basis that he is unqualified and that his testimony is neither relevant nor reliable under Rule 702 and *Daubert*. (*See* ECF No. 72).

Mr. Constable is an economic consultant who has a B.A. degree in Economics and an M.B.A. with a concentration in Finance and Business Statistics. (*See id.* Ex. 2 at 10, ECF No. 72-2). He has served as an expert in eighty-seven (87) cases, though he has only provided expert

testimony in three federal discrimination cases.  (ECF No. 72 at 2).  In fact, EEOC suggests that Mr. Constable's experience is focused on wrongful death and wrongful injury claims, rather than employment claims.  (*See id.*).  But, while EEOC may be correct that these areas are the focus of Mr. Constable's experience, he has also testified as an expert in five state employment discrimination cases and one employment discrimination arbitration, and regularly engages in continuing education on compensation matters.  (ECF No. 76 at 4–5).  Mr. Constable's background meets the "liberal" qualifications standard set forth in Rule 702: after all, he has provided deposition testimony as an expert in four wrongful termination matters, including one action in the Northern District of Ohio, has more than adequate education credentials, and is a member of the Society of Labor Economists.  (*See* Ex. 2, ECF No. 72-2 at 26–36).

Mr. Constable has produced a rebuttal report, which is focused on critiquing EEOC's expert report, prepared by Dr. Ashley Hirashima.  EEOC suggests that the report is not relevant, because it states a legal conclusion (in opining that Dr. Hirashima's approach is "unreasonable") and does not "fit" the issues disputed.  (*See* ECF No. 72 at 9–10).  As an initial matter, the alleged legal conclusion is contained in a portion of the report dedicated to the use of higher wages at the point of mitigation, which is discussed below and is not addressed here.  But other portions of Mr. Constable's expert report critique Dr. Hirashima's assumption that Knox will survive to age 100, provide additional information about life expectancy rates, and discuss other lost fringe benefits (besides pension).  (*Id.* Ex. 2, ECF No. 72-2 at 4–5).  These are relevant to the calculation of backpay — specifically, how to value fringe benefits — and therefore "fit" with the disputed issues at trial.

The crux of EEOC's argument is about Mr. Constable's opinions on back pay mitigation. EEOC suggests that his opinions on this topic are contrary to established methodologies, are not

rooted in published scholarship, appear to be driven by OSU's desired outcome, and are foreclosed by the Sixth Circuit's decision in *Skalka v. Fernal Env't Restoration Mgmt. Corp.*, 178 F.3d 414 (6th Cir. 1999). *Skalka* held that any "'excess' earnings [from a later, higher-paying job] are not to be subtracted from the back-pay award for the period of unemployment." *Id.* at 426. In Mr. Constable's rebuttal report, he takes issue with the fact that Dr. Hirashima's expert report omits the higher, ongoing wages that Knox received at his new job after his termination and fails to subtract these higher wages from the back pay estimate. (*See* Ex. A, ECF No. 72-2 at 4). But that omission is exactly what is required by *Skalka*.

Part of the confusion here stems from the question of what is actually discussed in Mr. Constable's report. His opinions appear to discuss the reduction in damages based on Knox's higher earnings (i.e., excess earnings), which is what is foreclosed by *Skalka* with respect to back pay. OSU argues that *Skalka* is inapplicable because Mr. Constable's opinions are confined solely to the issue of front pay (but that any portion of Mr. Constable's opinions that run afoul of *Skalka* are withdrawn and will not be presented at trial). (ECF No. 76 at 9). EEOC, however, suggests that Mr. Constable has misused the term "front pay" when in fact he refers to back pay and, moreover, that front pay is irrelevant as EEOC is not seeking any damages for front pay. *Cf. Szeinbach v. Ohio State Univ.*, 820 F.3d 814, 820 (6th Cir. 2016) (noting that "[b]ack pay . . . is money awarded for lost compensation during the period between the date of the plaintiff's injury (i.e., the date on which the discriminatory course of conduct began) and the date on which damages are determined" (citing *Howe v. City of Akron*, 801 F.3d 718, 745 (6th Cir. 2015))). In short, in critiquing Dr. Hirashima's expert report, which discusses back pay only, Mr. Constable's opinions about her failure to subtract excess earnings from back pay are contrary to *Skalka*.

As to EEOC's general claim that Mr. Constable's opinions are outcome-determinative and are prepared solely for trial, the Sixth Circuit and its sister circuits have long acknowledged the concerns that expert witnesses often provide opinions prepared solely for litigation.  *See Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434–35 (6th Cir. 2007); *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1317–18 (9th Cir. 1995).  But the fact that an opinion is delivered by a "quintessential expert for hire" does not require that the expert "be accorded a presumption of *unreliability*"; rather, the trial court must evaluate whether there is some objective basis for the opinion.  *See Manitowoc Boom Trucks*, 484 F.3d at 435.  And here, the remainder of Mr. Constable's report (i.e., the opinions not foreclosed by *Skalka*) appear to be rooted in objective, verifiable evidence, *see id.* (citing *Daubert*, 43 F.3d at 1317–18), such as Bureau of Labor Statistics reports, information from the Ohio Public Employee Retirement System ("OPERS"), and the National Center for Health Statistics.  (*See* Ex. 2, ECF No. 72-2).

Accordingly, EEOC's Motion to Exclude the Testimony and Report of Alex Constable (ECF No. 72) is **GRANTED IN PART AND DENIED IN PART**.  All opinions and testimony regarding the offset of back-pay based on higher post-termination wages from Knox's current employment are **EXCLUDED**; Mr. Constable's remaining opinions may be presented.

### 2.    Ashley Hirashima

OSU motions to exclude EEOC's damages expert, Dr. Ashley Hirashima, on the basis that she is not qualified to serve as an expert witness and that her opinions are unreliable.  (*See generally* ECF No. 83).  First, OSU suggests that Dr. Hirashima is not qualified because she lacks experience or research in calculating economic loss, has only published about macroeconomic issues, and failed to identify any treatises, articles, or resources supporting her

methodology.[1]  (*Id.* at 6).  Further, OSU notes that Dr. Hirashima has only drafted six reports and

has never been qualified to give expert testimony at a trial (including one case in which EEOC

withdrew her as an expert).  (*See id.* at 7).  But this description, as EEOC points out, omits and

misstates much of Dr. Hirashima's credentials.  She has, according to EEOC, a doctorate in

economics, has worked as a labor economist who regularly performs damages calculations, and

has authored more expert reports on employment discrimination than Mr. Constable.  (ECF No.

110 at 7).

The missing qualifications alleged by OSU are not enough to disqualify Dr. Hirashima,

given her background credentials.  The qualifications requirement of Rule 702 does not mandate

that experts publish articles in a given field.  *See Askew v. City of Memphis*, 2016 WL 4533584,

at *4 (W.D. Tenn. Feb. 29, 2016).  Nor does it require an individual to have first been qualified

by a court as an expert in order to serve in a later trial as an expert; that would be entirely

illogical, as such a requirement would result in no experts at all.  Moreover, OSU's objection to

Dr. Hirashima's inability to identify a treatise, article, or resource supporting her methodology

during her deposition would, if relied upon by this Court to exclude Dr. Hirashima, also require

the exclusion of Mr. Constable, who was likewise unable to note any scholarly articles

supporting his analysis.  And finally, EEOC notes that OSU has mischaracterized the case in

which EEOC withdrew Dr. Hirashima as a proposed expert witness upon objection; Dr.

Hirashima was in fact withdrawn when EEOC no longer required expert testimony as to

damages.  (*See* ECF No. 110 at 10).  In sum, based on Dr. Hirashima's background, including

advanced degrees in economics and specialized work experience focused on damages

---

[1] As an initial matter, the Court notes that OSU has filed a reply to EEOC's response opposing OSU's motion in limine to exclude the report and testimony of Dr. Hirashima.  (*See* ECF No. 121).  The Court's Pretrial Order stated that, in regards to pretrial motions and motions in limine, "[t]he Court will not accept any reply memoranda."  (ECF No. 70 at 6).  As such, OSU's reply brief will not be considered here.

calculations in employment discrimination cases, the Court concludes that she is qualified to testify as an expert in this case.

Next, OSU suggests that Dr. Hirashima's opinions are unreliable, because her estimated range for the damages are too broad, were unaccompanied by an affirmation of the economic certainty of the estimate, and are based on a faulty analysis of his expected annual salary increases.  None of these arguments requires exclusion of Dr. Hirashima's testimony or opinions.  First, OSU argues that her opinions are too uncertain to be admissible, because she estimated that Knox's total economic damages range from $257,732.06 to $640,180.58, based on calculations for lost pension benefits depending on whether Knox lived to age 70 up to age 100.  (*See* ECF No. 83 at 7, 9).  But there is no reason to question the reliability of Dr. Hirashima's estimated range: she has explained her methodology, which is based on Knox's tax statements and the formula for calculating pension benefits laid out by OPERS, and expanded that methodology over the age 70–100 time frame.

Second, OSU argues that Dr. Hirashima's calculations rely on speculative increases in Knox's future earnings.  Dr. Hirashima estimated the increases by looking to Knox's earning history at OSU, and taking the average of the past percentage salary increase over his career.  (*See* ECF No. 110 at 113).  OSU argues that this average takes into account two past job promotions, but that Dr. Hirashima "made no effort to determine whether Knox could have *reasonably* expected opportunities for job promotion in the future."  (ECF No. 83 at 11).  Instead, OSU notes without citation that none of his last thirteen salary increases hit the 4.24% mark, and none of the last six was above 3.36%.  (*Id.* at 12).  But OSU does not cite to any authority suggesting that a career-based average is inappropriate, unreliable, or not rooted in

objective data.[2]  Rather, the flaws that OSU has identified all go to the accuracy, rather than to the reliability, of Dr. Hirashima's calculations.  The point of Rule 702 is not, however, to gatekeep the accuracy of Dr. Hirashima's calculations, but to check whether "there is a reasonable factual basis for [her] opinion." *Babcock Power, Inc. v. Kapsalis*, 854 F. App'x 1, 8 (6th Cir. 2021) (internal citations omitted); *see also Andler v. Clear Channel Broad.*, 670 F.3d 717, 729 (6th Cir. 2012) (noting that, even if "[t]he factual basis for . . . [the] calculation may not be particularly strong, [] 'it is not proper for the Court to exclude expert testimony "merely because the factual bases for an expert's opinion are weak."'" (quoting *Boyar v. Korean Air Lines Co.*, 954 F. Supp. 4, 7 (D.D.C. 1996) (quoting *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 567 (D.C. Cir. 1993))).  That requirement has been met.  It is undisputed, after all, that Dr. Hirashima has arrived at her projected salary increase percentage by looking to factual evidence in the record.  Whether her calculations fail to take into account Mr. Knox's reasonable expectation of promotion, or other potential flaws, is an issue that OSU can rebut or explore at trial when she testifies, but is not an issue that precludes admittance of her report or testimony.

Finally, OSU suggests that Dr. Hirashima's calculations are unreliable because she was unable to testify to the economic certainty of her calculations.  (ECF No. 83 at 8–9).  But courts have repeatedly held that expert witnesses are not required to claim that their testimony has been made "to a reasonable degree of scientific certainty." *United States v. Cypher*, 553 F.2d 1064, 1072 (7th Cir. 1977); *see also Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) ("Rule 702, we recognize, does not require anything approaching absolute certainty." (citing

---

[2] In fact, Mr. Constable agreed with Dr. Hirashima on the total figure for Knox' backpay, which was calculated assuming a 4.24% annual increase in earnings.

*Daubert*, 509 U.S. at 590)). As such, the fact that Dr. Hirashima did not provide some estimation of certainty does not demonstrate a failure to satisfy the requirements of Rule 702.

Accordingly, Defendant's Motion to Exclude EEOC's Expert (ECF No. 83) is **DENIED**.

**B.      Internal OSU Investigation (ECF No. 73)**

EEOC seeks to exclude the internal investigation report conducted by OSU about Knox's termination, as well as the testimony of Kristi Hoge, the HR employee who prepared the report and was designated as OSU's Rule 30(b)(6) witness. (*See* ECF No. 73).

*1.      Internal Investigation Report*

First, with regards to the internal investigation report (the "Hoge Report"), EEOC suggests that the report and the findings therein are irrelevant, will mislead and confuse the jury, and is riddled with hearsay. (*Id.* at 1–2). The Hoge Report was triggered by the internal age discrimination complaint filed by Knox, six months after his termination, upon discovering that twenty-seven (27) year old Jennifer Lagnese had taken up his former position. The report was based on Hoge's review of documents related to Knox's termination and interviews with Knox, Chambers, and Lenzo. (*See id.* at 1). EEOC suggests that this information is not relevant because EEOC has not alleged a hostile work environment and no actions taken by OSU after the termination have any "tendency to make a fact more or less probable." FED. R. EVID. 401(a). OSU, on the other hand, argues that courts in the Sixth Circuit have repeatedly deemed HR investigation reports relevant to claims of employment discrimination. (ECF No. 75 at 4).

Although OSU's cited cases do not squarely address the issue of age discrimination claims pursuant to the ADEA, *see, e.g.*, *West v. Tyson Foods*, 374 F. App'x 624, 636 (6th Cir. 2012) (noting the relevance of internal investigation reports to determining whether a Title VII defendant knowingly violated federal law), there are sufficient similarities between other forms

of employment discrimination and age discrimination that internal investigation reports can be relevant to the latter claims. *Compare id.* (discussing the standard for punitive damages under Title VII), *with Hazen Paper Co. v. Biggins*, 507 U.S. 604, 615–16 (1993) (noting that the ADEA only provides liquidated damages for willful violations, that is, violations that are knowing or made with reckless disregard). After all, it is well established that "[t]he standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted); *see also* Fed. R. Evid. 401 advisory committee's notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). As such, the internal investigation report, which may bear on the issue of whether OSU's alleged age discrimination against Knox was willful,[3] is relevant.

EEOC also suggests that the report must be excluded because it "is littered with the self-serving and therefore unreliable hearsay statements of Lenzo and Chambers." (ECF No. 73 at 2 (citing *Gray v. L.J. Navy Trucking Co., Inc.*, 475 F.2d 545, 549–50 (6th Cir. 1973))). As an initial matter, OSU argues that the investigation report is not itself hearsay as it is a public record. (ECF No. 75 at 4–5 (collecting cases)). Moreover, it does not appear that the Hoge Report is based entirely on hearsay, and the timeliness of the investigation and the presumption that Hoge as an HR employee had the necessary skill to carry out the investigation militate in favor of admissibility. *See Nowell v. Univ. of Cincinnati*, 2006 WL 2619846, at *2 (S.D. Ohio Sept. 12, 2006) (noting that "[t]he Court may use four factors in assessing whether an evaluative report is trustworthy: (1) the timeliness of the investigation, (2) the special skill or experience of

---

[3] For example, the prompt commissioning of an internal investigation may suggest that OSU was making a good-faith effort to enforce its internal anti-discrimination policies.

the official, (3) whether a hearing was held and the level at which conducted, and (4) possible motivation problems" (citing FED. R. EVID. 803 advisory committee's note to Paragraph (8))). But statements contained within an admissible report might not be admissible themselves if they are hearsay. *See id.* ("The portions of the Report summarizing the interviews of the four eyewitnesses, on the other hand, are hearsay under Rule 801 and do not fall within any hearsay exception set forth in Rule 803."). As such, all sections of the Hoge Report summarizing interviews Hoge conducted with Lenzo and Chambers, and any opinions, conclusions, and conjecture relying solely on those interviews, *see Gray*, 475 F.2d at 550, are **EXCLUDED**.

Finally, EEOC suggests that the Hoge Report, even if relevant, should be deemed inadmissible as unduly prejudicial to the EEOC because "[t]estimony about the investigation . . . would risk the jury substituting Defendant's process and findings for its own." (ECF No. 73 at 2). Of course, the level of unfair prejudice necessary to exclude otherwise relevant evidence is a high bar and must be the type of evidence to "suggest a decision made on an improper basis." *United States v. Johnson*, 581 F. 3d 320, 327 (6th Cir. 2009). The concern with such evidence is that a "prior act may cause the jury to reach a verdict based on emotions instead of evidence." *United States v. Asher*, 910 F. 3d 854, 861–62 (6th Cir. 2018), or that the jury will "substitute the [investigation's] decision for its own findings." *Wright v. Columbia Sussex Corp.*, 2008 WL 972699, at *2 (E.D. Tenn. Apr. 7, 2008). The cases cited by OSU in support of admission of the investigation report generally discuss the relevance of such reports as to whether the employer violated anti-discrimination laws willfully, or properly conducted internal investigations to enforce its own internal policies. *See, e.g.*, *West*, 374 F. App'x at 636 (noting that evidence of employer's post-EEOC charge investigation went "directly to whether [the employer] attempted to enforce its policy in good faith" (citing *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 483

(7th Cir. 2003)); *Suchanek v. Univ. of Ky.*, 2011 WL 1642562, at *5 (E.D. Ky. May 2, 2011). Thus, the Court concludes that the internal investigation report has both probative value, as evidence of OSU's efforts to comply with the ADEA, and the potential for prejudice, in allowing the jury to substitute OSU's factual determinations as its own. Accordingly, the internal investigation report, inclusive of the limits set forth above, is admissible as evidence of OSU's efforts to comply with anti-discrimination laws or policies after the internal complaint, but is not admissible for the substance of the investigation findings.

### 2.    *Testimony of Kristi Hoge*

Concurrent with its request to exclude the Hoge Report, EEOC also asks this Court to exclude the testimony of Kristi Hoge herself. EEOC notes that Hoge has no personal knowledge related to Knox's termination or his replacement by Lagnese, and that her testimony would "merely function as a conduit to hearsay" as her knowledge about the incident derives entirely from her internal investigation interviews with Lenzo and Chambers. (*See* ECF No. 73 at 3). In short, EEOC argues that testimony from Hoge serves only to repeat the testimony of other OSU witnesses and to bolster their credibility. (*Id.*). But OSU points out that Hoge, as its Rule 30(b)(6) witness, testified about other topics besides her internal investigation in her deposition and will do so at trial too. (ECF No. 75 at 6). These topics include the external review of CETE commissioned by OSU and the subsequent reorganization of CETE, which OSU claims led to Knox's termination. (*Id.*). OSU also argues that EEOC has admitted that Hoge has relevant personal knowledge on several topics admissible at trial, though that admission is in fact quite narrow. (*See id.*; ECF No. 73 at 3 n.2). The Court agrees that, if OSU wishes to call Hoge to testify as to document metadata, it is not required to present that evidence via a stipulation. The Court also agrees, however, that Hoge's testimony is unnecessary to the extent that it is

16

duplicative, is supported only by, or is based upon statements made to her by Lenzo or Chambers regarding decisions about which she has no personal knowledge.

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** EEOC's Motion to Exclude (ECF No. 73). All portions of the Hoge Report summarizing interviews or drawing conclusions solely based upon those interviews are excluded. Any testimony from Kristi Hoge regarding or based upon her internal investigation interviews with Lenzo and Chambers is also excluded.

### C.    Terminations of Other Individuals (ECF Nos. 84, 85, 93)

Both parties have submitted motions in limine to exclude evidence of other complaints of age discrimination. In particular, OSU seeks to exclude the introduction of evidence relating to complaints submitted by other employees within the College, namely Neal Kelley and Bing Tian, and the termination of the director of CETE, Bob Mahlman. (*See generally* ECF No. 84). EEOC also seeks exclusion of evidence regarding Kelley and Tian, as well as any other individuals terminated from the College who did not work in HR like Knox. (*See generally* ECF No. 93). Finally, OSU asks to exclude any reference to the terminations of Professors Julianne Taaffe, Kathryn Moon, and Jane Smirniotopoulos, which resulted in an age discrimination lawsuit against OSU in this Court. (*See generally* ECF No. 85).

#### 1.    Terminations of Tian and Kelley

The Court begins with the request that the parties have in common: the exclusion of the internal age discrimination complaints of Tian and Kelley. Although both parties have asked the Court to exclude evidence of Tian and Kelley's separations from EHE, the rationale and scope of their requests differ greatly. OSU argues, in effect, that any allegations of age discrimination regarding Tian and Kelley are unsubstantiated and, even if substantiated, constitute

17

impermissible propensity evidence.  (ECF No. 83 at 5–6).  Concerned that EEOC may proffer evidence of their terminations as evidence of a pattern of age discrimination, OSU adds that Tian and Kelley held "positions that were entirely distinct from Knox [sic]" and therefore cannot be compared.  (*Id.* at 7).  Agreeing that Tian and Kelley should not be compared to Knox on account of their different positions, EEOC requested that evidence about their terminations be excluded from trial — in addition to evidence about twenty-seven (27) other employees who have been terminated from various departments within EHE.  (*See* ECF No. 93 at 2).  Further, EEOC represents that, though it does not plan to offer evidence of Tian and Kelley's complaints of age discrimination in its case-in-chief, it opposes OSU's motion to the extent that the motion precludes any reference to those complaints.  (*See* ECF No. 115).  EEOC argues that the Tian/Kelley complaints may be necessary on rebuttal, if OSU asserts that it has never treated older workers unfairly or attempts to impeach Knox regarding his Charge of Discrimination, in which he alleged that other employees have been subject to age discrimination.  (*Id.* at 2–3).

As both parties agree that evidence about and references to Tian and Kelley's age discrimination complaints would be unnecessarily distracting at trial, the Court agrees that such references should be excluded.  But because OSU has previously asserted that Knox is guilty of perjury and sought to undermine his credibility for claims made in the Charge of Discrimination, similar assertions or lines of impeachment at trial will open the door for EEOC to reference the Tian/Kelley complaints as rebuttal evidence in support of Knox's allegations in his Charge of Discrimination.  (*See id.* at 4).  Assertions by OSU that it has never treated older workers unfairly in the College will also be construed as opening the door for EEOC to reference the internal age discrimination complaints by Tian and Kelley.

18

2.      *Taaffe/Moon Age Discrimination Lawsuit*

A similar dynamic is at play with regards to OSU's motion to exclude all references to the age discrimination complaints filed by Professors Taaffe, Moon, and Smirniotopoulos (hereinafter, referred to collectively as the "Taaffe/Moon lawsuit").  (*See generally* ECF No. 85). OSU argues that these claims should not be admissible to show an atmosphere of age discrimination or employer bias because the relevant conduct is too far removed from Knox's termination, did not involve the same decisionmakers, and was not proximate in time.  (*See id.* at 6) (citing *Colley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994) (suggesting that courts must "examine[] statements allegedly showing employer bias by considering whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination").  But the multi-factor framework set forth in *Colley* cuts against OSU.  For example, OSU suggests that Taaffe/Moon lawsuit is not proximate in time to the issues at trial because the events occurred in 2010 and the suit was settled in 2014.  But this is incorrect.  In fact, the lawsuit was settled in 2018, the same year Knox was terminated.  (*See* ECF, Case No. 2:15-cv-02870; ECF No. 115 at 2).  Similarly, OSU suggests that the decisionmakers in the Taaffe/Moon lawsuit were not involved in Knox's termination, but Lenzo and Chambers (who, collectively, headed HR when Knox was fired) were aware of the Taaffe/Moon lawsuit and were involved in related terminations that resulted in further age discrimination complaints.

Moreover, EEOC represents that it does not intend affirmatively to offer evidence regarding the Taaffe/Moon lawsuit; instead, EEOC seeks only to offer such evidence in rebuttal if OSU argues that there is no history of age discrimination within EHE, suggests that the

19

decisionmakers in Knox's termination, Lenzo and Chambers, never treated older workers unfairly or were unaware of past allegations, or attempts to impeach Knox regarding the allegations made in the Charge of Discrimination.  (ECF No. 116 at 2 & n.3) (citing *Helfrich v. Lakeside Park Police Dep't*, 397 F. App'x 500, 509 (6th Cir. 2012) (unpublished)).  The limited circumstances in which EEOC plans to introduce evidence of the Taaffe/Moon lawsuit minimizes the dangers of unfair prejudice for the jury.  OSU alleges that the jury, upon hearing of the circumstances and outcome of the Taaffe/Moon claims, may assume that subsequent age discrimination claims are also true.  (ECF No. 85 at 7).  But, in this case, fears that the jury assume "a pattern of behavior" and find OSU guilty for counts not properly proven would only arise, if at all, if OSU has first "expand[ed] the use of [] testimony to the realm of character evidence," thus opening the door to rebuttal character evidence.  *See Crabbs v. Pitts*, 2018 WL 5262397, at *9 (S.D. Ohio Oct. 23, 2018) (citing *Helfrich*, 397 F. App'x at 509–10).

As such, the Court does not find that exclusion of evidence or reference to the Taaffe/Moon lawsuit is warranted at this time.

### 3.    *Other Terminations in EHE*

EEOC requests the exclusion of references to allegedly unrelated terminations in EHE, which OSU intends to offer in the form of a statistical compilation.  (*See generally* ECF No. 93). OSU suggests that comparator evidence has long been considered admissible in the employment discrimination context.  (ECF No. 114 at 3) (collecting cases).  The statistical data at issue, as the Court understands it, consists of a compilation of information about the termination of twenty-nine (29) employees (excluding Tian and Kelley)[4] within EHE from 2013–20 that OSU has

---

[4] The exclusion of Tian and Kelley, whom OSU has acknowledged were terminated from EHE during this time period, is not explained.

deemed "comparable to Knox." (*Id.*; ECF No. 93 at 2–3). The definition of "comparable" appears to be anyone who was not a member of faculty, an administrator, or a low-level staff position. (*See* Ex. 3, ECF No. 93). EEOC does not dispute that statistical evidence is admissible, but argues that this definition of "comparable" is too broad to be relevant or helpful to the jury, especially as the evidence encompasses a great many employees who did not share Knox's position, department, or managers. (ECF No. 93 at 3) (citing *Sprint/Utd. Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *Schrack v. RNL Carriers, Inc.*, 565 F. App'x 441, 445 (6th Cir. 2014)). As noted previously, OSU itself asserted that it would be inappropriate to compare the terminations of Tian or Kelley to the termination of Knox, because they "worked in grants development and management" and therefore "[t]heir positions were entirely distinct from Knox." (ECF No. 84 at 7).

The relevance of this statistical evidence depends, in part, on what evidence is proffered by the parties at trial. After all, if EEOC alleges an atmosphere or culture of age discrimination in the College at large, and not just within the HR department, terminations of employees in other departments may be relevant. As such, the Court will be better positioned to consider the relevance of these terminations at trial. *See also Indiana Ins. Co.*, 326 F. Supp. 2d at 846–47 ("Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." (internal citations omitted)). Accordingly, EEOC's Motion to Exclude (ECF No. 93) is **DENIED** as to the terminations of other EHE employees, besides Tian and Kelley.

*4.      Termination of Robert Mahlman*

Lastly, OSU has also motioned to exclude any allegations that the termination of Robert Mahlman from EHE was a result of age discrimination.  (ECF No. 84 at 8).  OSU notes that Mahlman was replaced as the Executive Director of CETE for reasons entirely unrelated to Knox's termination and nothing in the record supports an inference or allegation of age discrimination.  (*See id.*).  EEOC has represented that it does not plan to assert or allege that Mahlman's termination was the result of age-bias.  (ECF No. 115 at 6–7).  EEOC has also represented, however, that it plans to introduce evidence of Mahlman's termination to distinguish Knox's termination.  (*See id.* at 6).  OSU's motion in limine requests exclusion of any evidence of Mahlman's RIF, but nowhere in the motion does OSU argue that that is the gravamen of its request.  (*See* ECF No. 84 at 9) (asking to exclude "reference to Mahlman's RIF, or any other positions changes at or around the time of Knox's RIF").  As such, the Court does not read OSU's request broader than necessary.  Any references to, evidence of, or allegations that Mahlman's RIF was rooted in age-discrimination is excluded from trial.

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion to Exclude (ECF No. 84) and Plaintiff's Motion to Exclude (ECF No. 93).  Neither party may put forth evidence of the terminations of Tian and Kelley, except in rebuttal or as part of statistical evidence of comparable terminations from the College.  Neither party may put forth evidence of the termination of Mahlman as rooted in age-bias.  The Court **DENIES** Defendant's Motion to Exclude (ECF No. 85) as to the Taaffe/Moon lawsuit.

### D.      References to Fitness-for-Duty Examination of Renshaw (ECF No. 85)

OSU seeks to exclude all evidence regarding the allegation that Jodi Renshaw, the second-oldest HRG at the College after Knox, was forced to undergo a fitness-for-duty

examination because of age discrimination. (ECF No. 85 at 7–9). OSU suggests that any reference to this incident should be excluded pursuant to Rule 403 because it lacks probative value and carries the risk of unfair prejudice and possible confusion of issues. (*See id.* at 9). According to OSU, there is no evidentiary support for the claim that the examination was rooted in age animus, when in fact Renshaw was tested because she had recently disclosed an ADHD diagnosis and had been assigned more job responsibilities, leading Lenzo and Chambers to be "worried about [her] mental health." (*Id.* at 8) (quoting Deposition of Jodi Renshaw ("Renshaw Dep.") 73:13–14, ECF No. 41-1). But this explanation belies the story Renshaw herself tells of the same incident: she recalls Lenzo scrutinizing her work in the wake of Knox's termination with a level of detail that had never happened before, loading her with overtime work, and forcing her to see a psychiatrist without any prior consultation or indication that her ADHD diagnosis would require such an examination. (*See* Renshaw Dep. 39:20–40:24, 71:17–73:10). It does not appear, contrary to OSU's assertions, that this type of examination was typical for an ADHD diagnosis; at the very least, both Renshaw and Jennifer Lagnese, the younger employee that EEOC alleges replaced Knox, were both surprised that Renshaw had been forced to see a psychiatrist. (*See id.* 73:15–17, 74:3–9). The basis of OSU's assertion that this incident is irrelevant because it involved different decisionmakers is similarly questionable. (*See* ECF No. 85 at 9). Lenzo and Chambers, who, according to EEOC's allegations, orchestrated Knox's terminations, were also the EHE personnel that required Renshaw to see the psychiatrist.

Moreover, EEOC suggests that the Renshaw incident satisfies all the criteria for admissibility of "other acts" testimony in employment discrimination cases. (ECF No. 111 at 6) (citing *Schrack*, 565 F. App'x at 445). In *Schrack*, the Sixth Circuit set out six factors for determining whether "other acts" testimony is relevant in the employment context:

23

> (1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same "bad actors" were involved in the "other" conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations.

*Schrack*, 565 F. App'x at 445 (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012)). EEOC has alleged that the adverse treatment of Renshaw was part of the same broader culture of age discrimination that led to Knox's termination. It also appears that Lenzo and Chambers were involved in both decisions, that Renshaw and Knox worked in the same role, and that the incidents happened in close succession. Without deciding on the merits of the allegations, the Court concludes that the treatment of Renshaw is relevant to EEOC's allegations regarding the termination of Knox.

Although OSU suggests that allegations about the treatment of Renshaw would be unduly prejudicial, it has not adequately explained what prejudice it would suffer if such allegations are introduced at trial. (*See generally* ECF No. 85 at 9). OSU's proffered legitimate, non-discriminatory reason for requiring Renshaw to see a psychiatrist may be helpful to OSU as rebuttal evidence at trial, but it has little bearing on whether evidence of the fitness-for-duty examination is so shocking as to involve the risk that "the jury [will] reach a verdict based on emotions instead of evidence." *Asher*, 910 F.3d at 861–62.

Accordingly, Defendant's Motion to Exclude (ECF No. 85) is **DENIED** as to evidence of Renshaw's fitness-for-duty examination.

### E.     Hypothetical Question to Daniels (ECF No. 85)

Next, OSU seeks to exclude testimony by Adam Daniels, who was co-manager of Human Resources at CETE, when Knox re-applied for an HRG position after his termination. (*See*

*generally* ECF No. 85 at 9–12). Specifically, during Daniels' deposition, he discussed his notes from his interview with Knox, in which he had written that "[i]t didn't seem the data work Al Knox outlined has been actionable up to this point." (Deposition of Adam Daniels ("Daniels Dep."), Ex. 83, ECF No. 34-6 at 10). About this note, Daniels was asked whether "it's an example of age bias to assume that an older worker would not be able to understand technology." (Daniels Dep. 147:21–148:2, ECF No. 34-1). OSU suggests that this question, and Daniels' answer to it, has no probative value, because the question "was in reference to an <u>email sent in August 2013 about health screening notices for OSU employees</u>." (ECF No. 85 at 10) (emphasis in original). But, as set out above, that is incorrect: the deposition question directly referenced Daniels' own notes from his interview of Knox. (*See* Daniels Dep. 146:25–147:1) (laying the foundation for Daniels' notes from the interviews, before asking the question at issue).

Whether the question, and Daniels' answer to it, has any probative value is a closer call.[5] The Sixth Circuit has held that not all statements that older employees fail to adapt to new technologies are probative of age animus, as some are too "general, vague, or ambiguous" to establish animus. *See Duncan v. Sam's Club*, 2022 WL 17489104, at *3 (6th Cir. Dec. 7, 2022) (unpublished) (collecting cases). But there is a fine line between general comments and "ageist insults" like "badger[ing] an employee about retirement. *Id.* (quoting *Sloat v. Hewlett-Packard Enter. Co.*, 18 F.4th 204, 210 (6th Cir. 2021)). Moreover, the Court must be "mindful that [alleged discriminatory] remarks [may] buttress one another," so remarks must be considered in context and should not be evaluated in isolation. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998); *see also Stipkala v. Am. Red Cross*, 215 F.3d 1327, 2000 WL

---

[5] EEOC suggests that OSU has not challenged the hypothetical question under Rule 403, but OSU states in its motion in limine that "[t]here is absolutely no value to Mr. Daniels' answer to the hypothetical question in his deposition." (ECF No. 85 at 11; ECF No. 116 at 10 n.12). Although OSU does not explicitly reference Rule 403, the Court understands this critique of the testimony as a Rule 403 challenge.

712378, at *4 (6th Cir. 2000) (unpublished) (noting that the remark that employee was "too old to learn" was age neutral as it "reflect[ed] the undisputed fact that plaintiff had not learned to use a computer . . . despite being asked to do so in several performance evaluations" (citing *Ercegovich*, 154 F.3d at 350)).  Here, EEOC suggests that Daniels' answer to the hypothetical may have value in showing his mindset, even if it is "general, vague, or ambiguous" in the abstract, because he "cannot explain why negative assumptions about an older employee's technology skillset are contained in the interview notes."  (ECF No. 116 at 8–9) (citing Daniels Dep. 141:22–142:7, ECF No. 34).  As the question may bear on whether OSU's stated reasons for not re-hiring Knox were pretextual, the Court declines to exclude the evidence at this time. *See Delay*, 2012 WL 5878873, at *2 ("When a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context.").

Accordingly, Defendant's Motion to Exclude (ECF No. 85) is **DENIED** as to Daniels' testimony to the hypothetical question.

### F.    Administrative Process (ECF No. 90)

EEOC has moved to exclude any evidence, testimony, and argument about EEOC's administrative findings and the internal processes which led to the EEOC's decision to initiate this case.[6]  (*See generally* ECF No. 90).  OSU does not oppose this motion.  (*See* ECF, 2:20-cv-04624; *see also* Unofficial Tr. of Final Pretrial Conf. ("Unofficial Tr.") 4:11–16).  Accordingly, the Court **GRANTS** EEOC's Unopposed Motion in Limine (ECF No. 90).

---

[6] This does not include Mr. Knox's complaint filed with the EEOC.

26

### G.   Negative Assessment of Knox's Job Performance (ECF No. 91)

EEOC has also moved to exclude any evidence of negative assessments of Knox's job performance.  (*See generally* ECF No. 91).  The parties have stipulated that "[t]hroughout his employment at Defendant, Alan Knox consistently maintained satisfactory or better performance evaluations" and that "Alan Knox's termination was not the result of disciplinary actions or performance issues."   (*Id.* at 1; *see also* Joint Stipulation ¶¶ 6, 7, ECF No. 80).  OSU does not oppose this motion.  (*See* ECF, 2:20-cv-04624; *see also* Unofficial Tr. 5:10–13).  Accordingly, the Court **GRANTS** EEOC's Unopposed Motion in Limine (ECF No. 91).

### H.   Testimony of Laura Justice (ECF No. 92)

Next, EEOC has moved to exclude the testimony of Laura Justice, who is a faculty member at OSU and director of two centers within the College (specifically, CCEC and SFC). (*See generally* ECF No. 92).  OSU does not oppose this motion and has not included Ms. Justice in its amended trial witness list.  (*See* Unofficial Tr. 5:8–13; *compare* Def.'s Witness List ¶ O, ECF No. 78, *with* Def.'s Am. Witness List, ECF No. 108).  As such, the Court **GRANTS** Plaintiff's Motion to Exclude (ECF No. 92).

### I.   Post-Termination Communications (ECF Nos. 96, 98)

Unlike the previous three motions in limine discussed, OSU has filed memoranda in opposition to EEOC's motions to exclude Knox's post-termination communications with his former co-worker, Terry West, and his former supervisor, Bryan Lenzo.  (*See* ECF Nos. 96, 98).

#### *1.   Post-Termination Communications with Terry West*

Knox exchanged text messages with West on two occasions following his termination. (ECF No. 96 at 1).  In these texts, Knox and West discussed the former's job search, and Knox at one point said that he was planning to take some time off, as he wanted a break to work on some

27

personal projects. (*See id.*). EEOC suggests that these texts are irrelevant and are prejudicial, because they will mislead the jury into thinking that Knox was no longer seeking employment (in general or specifically at OSU), even though "it is undisputed that he applied for many OSU jobs." (*Id.* at 2). Moreover, even if the texts indicated that Knox was not attempting to mitigate, EEOC argues that the OSU has explicitly agreed that the cut-off date for backpay damages, which is based on the date of full mitigation, is January 1, 2021. (*See id.*) (citing ECF No. 76 at 9). But the existence of evidence that contradicts this text excerpt, such as Knox's testimony that he was seeking other jobs, does not indicate that the texts are irrelevant;[7] rather, it goes to the weight of the evidence. *See Red Strokes Ent., Inc. v. Sanderson*, 977 F. Supp. 2d 837, 846 (M.D. Tenn. 2013) (noting that "Rule 403" does not deem 'prejudicial' otherwise admissible evidence solely on the basis that it . . . contradicts [a witness's] own testimony").

Accordingly, the Court **DENIES** Plaintiff's Motion to Exclude (ECF No. 96).

2. *Post-Termination Communications and Relationship with Bryan Lenzo*

EEOC also seeks to exclude all evidence of Knox's post-termination communications (and relationship) with Lenzo, his former supervisor at the College. (*See* ECF No. 98). After Knox's termination, he asked Lenzo to serve as a reference and texted Lenzo about reference requests. (*Id.*). Later, after Lenzo himself was terminated by OSU, Lenzo and Knox texted to commiserate, complain, and network, exchanging over 1,600 texts between June 2018 and October 2021. (*Id.*). Eventually, Lenzo found a new job at Wallick Communities and informed Knox about an opening there; Knox pursued the lead and began working at Wallick in June 2020. (*Id.* at 2). EEOC notes that texts between Lenzo and Knox are not relevant as evidence of

---

[7] Although OSU did note in its own briefing regarding the expert reports that "the parties agreed" on a cutoff date for backpay damages, based on the date of full mitigation, it appears that OSU seeks to introduce the text messages between Knox and West as evidence that Knox failed to satisfy his burden to mitigate his damages. (*See* ECF No. 111 at 1).

OSU's reasons for terminating Knox, as they began half a year after the termination, or as evidence of Knox's belief (or lack thereof) that OSU discriminated against him. (*See id.* at 1, 2).

But these texts are clearly relevant, according to OSU, because they demonstrate that Lenzo, who allegedly orchestrated the age-biased dismissal of Knox, did not in fact harbor bias against Knox. (ECF No. 98 at 2–3). This argument relies on the "same actor inference," which "allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 483 (6th Cir. 2012) (quoting *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995)). If the employer was so biased against the employee, she would not re-hire the same employee later — or so the theory goes. EEOC suggests that the same actor inference is unavailable here, given evidence of "Lenzo's change in 'attitude and surrounding circumstances' following his termination from OSU." (ECF No. 98 at 2–3) (citing *Varlesi v. Wayne State Univ.*, 643 F. App'x 507, 517 (6th Cir. 2016)). But, in *Varlesi*, the Sixth Circuit found that the evidence at trial, including evidence of changes in attitude and circumstances, "did not support the giving of [the same actor inference] instruction." *Varlesi*, 643 F. App'x at 517. As no evidence has yet been presented at trial of such changes,[8] the exclusion of the post-termination communications and relationship would be premature at this juncture. *See also Indiana Ins. Co.*, 326 F. Supp. 2d at 846–47.

Accordingly, the Court **DENIES** Plaintiff's Motion to Exclude (ECF No. 98).

### J.    Non-Pursuit of Failure-to-Hire Claims (ECF No. 97)

EEOC moves to exclude evidence and argument about its own pursuit of several failure-to-hire claims that were included in its initial Complaint against OSU but were later withdrawn

---

[8] Additionally, EEOC has not specified when Lenzo's attitude and circumstances began to change; it appears that the text communications began before Lenzo was fired and Lenzo had already agreed to be a reference for Knox by that point. (*See* ECF No. 98 at 1).

at the summary judgment stage. (*See* ECF No. 97 at 1) (citing ECF No. 58 at 68 n.22). The parties have represented to the Court that: (1) EEOC will file a stipulation withdrawing the above-mentioned failure-to-hire claims (i.e., all failure-to-hire claims except the one claim regarding an HRG position); and (2) OSU will withdraw its opposition to this motion. (Unofficial Tr. 8:5–15).

As such, EEOC's motion to exclude (ECF No. 97) is **GRANTED**.

### K. Motion to Strike (ECF No. 120)

Finally, besides the motions in limine, EEOC has also filed a Motion to Strike (ECF No. 120), regarding several of OSU's exhibits as listed in the Appendix to the Proposed Joint Pretrial Order (ECF No. 118-2). On January 23, 2023, after the parties filed witness and exhibit lists, EEOC moved to compel OSU to file an amended exhibit list in compliance with this Court's pretrial order. (*See generally* ECF No. 89). The Court granted in part the motion to compel, because many of OSU's listed exhibits were overly broad, included catchall terms, failed to identify specific items of documentary proof, and used non-inclusive lists. (ECF No. 104 at 3–4). The Order required OSU to identify exhibits to be presented at trial clearly and individually. (*Id.* at 6–7). In response, OSU filed an Amended Exhibit List (ECF No. 107), which added Bates numbers to the exhibits and narrowed some of the listed exhibits.

EEOC now argues that the Amended Exhibit List (ECF No. 107) continues to be non-compliant with this Court's Pretrial Order (ECF No. 70) and subsequent Order (ECF No. 104) granting in part the motion to compel. On that basis, EEOC asks this Court to strike OSU's exhibits D2, D4, D6, D7, D8, D15–D23, D25 (as listed in the parties' Proposed Joint Pretrial Order). (*See* ECF No. 118-2 at 8–23). Although the Court acknowledges EEOC's concerns about OSU's alleged non-compliance with the Court's orders and Rule 26, the Court has a strong

30

preference that cases be decided on the merits. *See Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986); *see also Petrobas Energia, S.A. v. Ams. Int'l., Inc.*, 2005 WL 2233296, at *2 (N.D. Ohio Aug. 25, 2005) (unpublished) ("Whether to strike certain evidentiary material is subject to the Court's discretion." (citing *Seay v. Tenn. Valley. Auth.*, 339 F.3d 454, 480 (6th Cir. 2003))). In accordance with that preference, the Court will allow OSU's Amended Exhibit List, with the following modifications as agreed to by OSU.

First, OSU has orally represented to this Court that exhibits D2 and D25 will not be entered at trial. (Unofficial Tr. 10:4–7). Second, OSU has represented to the Court that, for the personnel files of OSU employees (i.e., exhibits D15–D23), OSU will identify for the Court and to EEOC the particular documents within each personnel file that it plans to use at trial. (*See id.* 11:7–20). Third, exhibit D4, which consists of the Hoge Report and accompanying exhibits, has been addressed by the Court's decision granting in part and denying in part EEOC's Motion to Exclude (ECF No. 73). *See supra* Part IV.B. Fourth, with respect to exhibits D7 and D8, which include internal OSU policies, OSU will limit its evidence to the 2015 equal employment opportunity ("EEO") policy and will withdraw all other policies. (*See* Unofficial Tr. 18:21–19:1). And finally, with respect to D4, the Court finds that this exhibit, which is consists of the internal notes, meeting minutes, and documents regarding the reorganization of CETE, is sufficiently specific to be deemed compliant with the Court's previous Orders.

Accordingly, EEOC's Motion to Strike (ECF No. 120) is **DENIED IN PART and DENIED IN PART AS MOOT**.

## V. CONCLUSION

For the reasons stated more fully above, this Court **GRANTS** EEOC's unopposed Motions to Exclude (ECF Nos. 90, 91, 92, 97), **GRANTS IN PART and DENIES IN PART**

EEOC's Motions to Exclude (ECF Nos. 72, 73, 93) and OSU's Motion to Exclude (ECF No. 84),

**DENIES IN PART and DENIES IN PART AS MOOT** EEOC's Motion to Strike (ECF No. 120), and **DENIES** EEOC's Motions to Exclude (ECF Nos. 96, 98) and OSU's Motions to Exclude (ECF Nos. 83, 85).  Accordingly, the Court **EXCLUDES** from trial:

1. all portions of Mr. Constable's expert rebuttal report that contradicts the back pay mitigation calculation approach set forth in *Skalka*;

2. introduction of the portions of the Hoge Report that rely on hearsay;

3. introduction of the Hoge Report for the substance of the findings;

4. testimony of Kristi Hoge as to her investigation interviews with Bryan Lenzo and Jacquelyn Chambers;

5. any evidence or reference to the age discrimination complaints of Tian and Kelley, except on rebuttal;

6. any reference to the termination of Mahlman as an example of age discrimination;

7. evidence of EEOC's administrative process and findings;

8. evidence of negative assessments of Knox's job performance;

9. testimony from Laura Justice; and

10. any evidence of or reference to EEOC's non-pursuit of the other failure-to-hire claims.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  February 22, 2023**