IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>THE OHIO STATE UNIVERSITY,<br><br>    Defendant. | Case No. 2:20-cv-04624-ALM-KAJ<br><br>Chief Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |

**PLAINTIFF'S TRIAL BRIEF**

I. Factual Background

The EEOC will prove that Defendant terminated Alan Knox ("Knox") as a Human Resources Generalist ("HRG") because of his age, 52, in violation of the Age Discrimination in Employment Act ("ADEA"), and failed to rehire him to an HRG position, also because of his age. Knox, an employee with 20 years of human resources experience, 10 of them as an HRG with Defendant, offered human resources support to the employees in three centers in the College of Education and Human Ecology ("the College"): the Schoenbaum Family Center ("SFC"), the Crane Center for Early Childhood Research and Policy ("CCEC"), and the Center on Education and Training for Employment ("CETE"). Defendant denies age discrimination and claims that it combined CETE with another department, resulting in insufficient work to justify retaining Knox. However, contemporaneous documents demonstrate that Knox's termination was unrelated to changes in CETE and that Defendant had planned, even before Knox was gone, to replace him with 27-year-old Jennifer Lagnese, Knox's assistant for SFC and CCEC who had been promised a promotion when she was hired less than a year earlier. The plan was executed

1

upon Knox's removal, with Lagnese being promoted based on increased responsibilities, and then promoted a second time six months later into the HRG position previously occupied by Knox. To find for EEOC on the termination claim, the jury need simply to follow the SFC and CCEC workload: Knox had more work in SFC and CCEC than either the 31-year-old HRG who had been assigned to those centers immediately before him, or Lagnese immediately after him. EEOC will establish that whether SFC and CCEC alone generated enough work to justify a full-time HRG depended entirely on the age of the HRG.

After his termination, Knox applied for an open HRG position with the College, but Defendant failed to advance him past a telephone screening interview, and hired a less qualified and significantly younger applicant. Knox had ten more years of experience than the candidate Defendant eventually hired, Teri Parsell, and had actual experience working in the College as an HRG, something Parsell also lacked. Defendant made clear it was looking for a younger worker as it praised Parsell as a "clone" of the younger employee who had formerly held the position. The hiring manager, Adam Daniels, also criticized Knox for his answer to an interview question but praised a much younger applicant for a similar answer to the same question and declined to pose the question to Parsell. As Knox was not terminated for performance issues, the only rational explanation for Defendant's failure to rehire him to a position it knew he could perform without issue is continuing age discrimination.[1]

## II.     Expected Legal Issues

For its wrongful termination and failure to rehire claims it is undisputed that Alan Knox was at least age 40, and that Defendant fired him and failed to rehire him. EEOC will have to prove that age "was the 'but-for' cause of [Defendant]'s adverse decision[s]." *Gross v. FBL Fin.*

---

[1] For a more comprehensive recounting of the facts, Plaintiff directs the Court to its Response in Opposition to Defendant's Motion for Summary Judgement, ECF 58.

*Servs. Inc.*, 557 U.S. 167, 176 (2009). For this to be established, EEOC need not show that age was the only reason for Knox's termination or Defendant's failure to rehire him, but only that the addition of age to any other reasons led to the decision, "if, so to speak, it was the straw that broke the camel's back." *Burrage v. U.S.*, 521 U.S. 204, 210 (2014); *see also Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 540-41 (6th Cir. 2014) (overturning summary judgement where a jury could find that although performance issues and age were both factors in the employee's termination, age was the but-for cause).

### A.  Age-Based Termination

To demonstrate but-for causation on its termination claim, EEOC will first show that Defendant replaced Knox with Jennifer Lagnese, a much younger, less qualified employee and Knox's former assistant. A younger employee replaces an older employee under the ADEA when the addition of the replaced employee's duties "fundamentally change[s] the nature" of the younger employee's employment. *Tinker v. Sears Roebuck*, 127 F.3d 519, 522 (6th Cir. 1997). EEOC will demonstrate that Defendant intended to replace Knox with Lagnese, immediately promoting her and lauding "her ability to perform strategic front-line services as a HR Generalist for the SFC/CCEC department" in an April 12, 2018, letter, written on the eve of Knox's last day in the College. Knox. Ex. 1, Chambers Letter.

Moreover, when Defendant promoted Lagnese a second time only six months after firing Knox, it admitted, in the documentation written to justify her promotion, that Lagnese was indeed performing Knox's former assignment as the HRG for SFC and CCEC. *See* Ex. 2 Chambers October 12, 2018, Email Thread Requesting Lagnese HRG Promotion, Chambers Promotion Justification ("Jennifer is now located in the SFC/CCEC facility 80% of her time"). Because Lagnese's second promotion occurred through a reclassification, and not a competitive

selection, she had to have been functioning as an HRG in order to be reclassified into that job. Even if Lagnese had initially retained some of her original lower-level duties for some period of time after Knox's firing, the contemporaneous documentation justifying her second promotion reveal that the majority of her time was eventually diverted to managing Knox's former workload. *Pierson*, 749 F.3d at 539 (reversing summary judgment and finding evidence of replacement where a younger employee took on the terminated employee's duties and began working at the terminated employee's location but also retained some previous responsibilities).

Defendant will argue that Lagnese did not replace Knox because she did not formally become an HRG until six months after his termination and that, in the interim, Jackie Chambers, and not Lagnese, was functioning as the HRG for SFC and CCEC. Though the record supports EEOC's account that Lagnese immediately assumed many of Knox's duties, even if Lagnese absorbed Knox's workload six-months after his termination, this does not undermine her status as his younger replacement. *See Blizzard v. Marion Technical College*, 698 F.3d 275, 284 (6th Cir. 2012) ("This conclusion [that a younger employee replaced the Plaintiff] is not undermined by the fact that there was a lapse in time between [the Plaintiff's] termination date and [the replacement's] hiring date."). Thus, Defendant's position remains irrelevant under the Sixth Circuit law defining what it means for a younger employee to replace an older employee. Under *Pierson* and *Blizzard*, it does not matter if Chambers was a temporary replacement for Knox, or if Lagnese initially was helping Chambers or had some sort of a hybrid role where she was functioning as both an assistant and an HRG. All that matters is that the eventual assumption of Knox's duties "fundamentally change[d] the nature" of Lagnese's employment. Here, that certainly occurred. As a result of Knox being fired, Lagnese went from being Knox's assistant to

4

the HRG for SFC and CCEC, with a new title, higher-level work and autonomy, and much higher pay.

Further, EEOC will demonstrate the pretextual nature of Defendant's assertion that a reduction in force pertaining to Knox was necessary. Both Knox's younger predecessor and younger replacement held the same position (HRG for SFC and CCEC) but supported fewer employees than Knox did when he was terminated. At the time of his termination, Knox, age 52, supported 89 Full Time Employees ("FTE") in SFC and CCEC. A prior HRG for SFC and CCEC, Terra Metzger, age 31, supported only 60 FTEs but received a retention equity bonus for her work. Lagnese, at age 27, received a salary increase and a promotion to HRG to support approximately 84 FTEs. The only salient difference between Knox, Metzger, and Lagnese was Knox's age. *See Pierson*, 749 at 538 (finding sufficient evidence to reverse summary judgment where the plaintiff's position was not actually abolished, and a younger employee assumed the same duties).

B. Failure to Hire

EEOC will demonstrate that Knox's 20 years of human resources experience and ten years of experience as an HRG in the College made him a better candidate or at least one with qualifications "equivalent to the minimum objective criteria required" for an HRG position in the College. *George v. Youngstown State University*, 966 F.3d 446, 464 (6th Cir. 2020) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (*en banc*)). Knox had worked for multiple centers and departments within the College, and EEOC will show that Defendant's proffered reasons for failing to hire him are pretextual. For example, Adam Daniels, the decision-maker who stymied Knox's hiring, favored a younger employee and admitted to seeking a "clone," of a former young HRG, stated that it was not an example of age bias to

5

assume older workers would not understand technology, took issue with Knox's interview responses but not with similar responses by a younger applicant, and failed to ask the younger selectee the nettlesome question that he claims was Knox's downfall, while also conceding that the question was important and should have been asked consistently. Ex. 3, Daniels Dep. at 105-06, 118-19, 132, 144-48; Ex. 4 Daniels Candidate Evaluation Summary. Each example of Daniels' bias "buttress[es] one another as well as any other pretextual evidence supporting an inference of discriminatory animus." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998). Put simply, given Knox's superior and highly relevant qualifications, a strong inference exists that the failure to rehire him, when his termination was in no way related to job performance, was merely a continuation of the age discrimination underlying Knox's termination. Defendant wanted him gone and did not want him back for the same reason: his age.

### C. Damages

EEOC expects to succeed on both its termination and failure to hire claims, in which case the jury will be required to award backpay. Under the ADEA, backpay is not only authorized, *Howe v. City of Akron*, 801 F.3d 718, 744 (6th Cir. 2015), but is also a form of mandatory relief once a violation has been found, *Wheeler v. McKinley Enterprises*, 937 F.2d 1158, 1163 (6th Cir. 1991) (". . . a person who has suffered a wage loss as a result of having been discharged in violation of the ADEA is entitled to judgment for his back pay").[2] The back pay award should not reflect "back pay for any period in which he earned an equal or higher salary than he would have earned at [Defendant], but . . . his 'excess' earnings are not to be subtracted from the back-

---

[2] *See also* 29 U.S.C. § 626(b) (referencing 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.")).

pay award." *Skalka v. Fernald Environmental Restoration Management Corp.*, 178 F.3d 414, 426 (6th Cir. 1999) (internal citations omitted).[3] Both parties agree that back pay at the point when Knox fully mitigated amounted to $69,853.81. ECF No. 76 at PageID 6022. Dr. Ashley Hirashima will present her backpay and pension calculations.

### III. Expected Evidentiary Issues

In addition to those evidentiary issues covered in Plaintiff's motions *in limine*, ECF Nos. 73, 90, 91, 92, 93, 94, 97, and 98, Plaintiff sets forth the following potential evidentiary question it reasonably expects to arise at trial.

#### A. Exclusion of Defendant's Admission of its Own Interrogatories

Defendant's inclusion of its response to Plaintiff's Interrogatory No. 18 in its updated exhibit list demonstrates that it intends to offer "statistical" evidence of other terminations in the College. ECF 107 at PageID 6720. Its plan is flawed for several reasons.

First, Defendant's proffer of its own interrogatory answers is a blatant attempt to introduce hearsay into the record. While Federal Rule of Evidence 801(d)(2) allows the use of an *opposing party's* interrogatory answers as an admission by a party opponent as non-hearsay, the same cannot be said of a party's attempt to use its *own* interrogatory answers. *See Hobson v. Mattis*, No. 3:14-cv-01540, 2017 WL 11475404 at *22 (M.D. Tenn. Sept. 11, 2017) ("The plaintiff's interrogatories may be offered into evidence by the defendant as a party admission. Offered by the plaintiff, they are simply hearsay"); *see also Kirk v. Raymark Industries, Inc.*, 61

---

[3] It would be similarly inappropriate to subtract Knox's post-mitigation earnings from any pension benefits the jury may award because post-mitigation earnings should not be treated as a credit or offset. *See Skalka*, 178 F.3d at 426. Subtracting post-mitigation earnings flies in the face of the "make whole" principles that underpin employment discrimination cases. *Szeinbach v. Ohio State University*, 820 F.3d 814, 821 (6th Cir. 2016) ("The goal, after all, is to make the plaintiff just as well off as []he would have been in a nondiscriminatory employment situation.").

7

F.3d 147, 167 (3rd Cir. 1995) (finding error where a district court admitted the interrogatory of a co-defendant who had settled and was no longer a party opponent as part of the residual exception to hearsay because allowing such statements "without the opportunity for cross-examination implicates many of the dangers the hearsay rule is designed to prevent").[4]

Second, the interrogatory answer lacks foundation. It is a "compilation" of data from Defendant's HRIS system that was cherry-picked by defense counsel based on her unilateral determination of what other terminated employees in the College were comparably situated to Knox. The arbitrary nature of the data collection is demonstrated by the fact that Bing Tian and Neal Kelley are not included in the list even though during the EEOC investigation, Defendant stated that they were terminated in the same RIF as Knox. Ex. 5, Def. Administrative Position Statement, EEOC_000132. Although the Court ordered Defendant to produce the underlying documents in response to Plaintiff's Interrogatory No. 18, ECF 23 at PageID 50. Defendant refused to produce them.[5]

Defendant's purported data compilation through its interrogatory answer is governed by Federal Rule of Evidence 1006 and, in order to be admissible, the proponent must show that:

---

[4] Defendant attempts to sidestep its hearsay problem by asserting that in a recent case "evidence was provided via the affidavit of the plaintiff's attorney, and the court considered that 'admissible' and analyzed the statistical data." ECF 114 at PageID 6886. This is, at best, an extremely charitable interpretation. In fact, the Sixth Circuit stated, "For today's purposes, we will assume the statistical evidence in Papierz's lawyer's affidavit is admissible" in order to point out that the data was so poor that it would not overcome summary judgment even if it were to be considered. *Papierz v. Benteler Automotive Corporation*. No. 21-1237, 2022 WL 154342 at *3 (6th Cir. Jan. 18, 2022).

[5] Defendant argues that the court was "mistaken" in ordering it to produce documents and it was only ever required to produce data. The relevant text of the order reads, "Accordingly, Defendant is **ORDERED** to produce <u>documents</u> responsive to Plaintiff's Interrogatory No. 18 as follows: (1) <u>documents</u> relating to the approximately 90 involuntary terminations identified in Plaintiff's letter brief; (2) within those 90 involuntary terminations, <u>documents</u> relating only to those employees in comparable positions as Alan Knox; and (3) only those <u>documents</u> which are contained in Defendant's Human Resources Information System. Defendant must produce the responsive <u>documents</u> by **September 22, 2021**." ECF 23 at PageID 50 (boldface in the original) (underlining added). Defendant also asserts, without citation, that "[t]he Parties, at the time the order was issued, agreed that this was an error and agreed that OSU was to produce data, not documents." ECF 114 at PageID 6885. This is not correct.

> "(1) the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place; (3) the underlying documents must be admissible in evidence; (4) the summary must be accurate and nonprejudicial; and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation."

*U.S. v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008). Defendant runs afoul of these requirements immediately because it has never produced the underlying documents it now proposes to summarize. As the underlying data was never produced in discovery, we can only speculate as to how voluminous they might be (as Defendant originally objected to the request as too burdensome), or whether the underlying electronic documents are admissible, or even who at OSU supervised its preparation.[6]

Moreover, for such a summary to be nonprejudicial, it must "summarize[] information contained in the underlying documents accurately, correctly, and in a nonmisleading manner." *U.S. v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998). Again, as Defendant has not provided the underlying documentation it cannot show that it has met this requirement. Further, Defendant made the decision of who it deemed "comparable" to Knox entirely on its own. *See* Ex. 6, Sept. Email Chain from Def.'s Counsel (deciding that "academic positions (faculty, researchers) are not comparable, nor are low level staff positions (janitors), nor are administrators (deans, department chairs)"). Defendant's cherry-picking of who is considered "comparable" ensures that—even if it had produced the underlying documentation in discovery—Defendant's "compilation" would be prejudicial and is inadmissible under Rule 1006.

IV.     Conclusion

---

[6] As Defendant's counsel now asserts that attorney-compiled data is "admissible" the assumption is that she would be the witness required to lay foundation. Defense counsel was not listed on Defendant's witness list, ECF 79; had she been, it would have been grounds for disqualification.

At the conclusion of the case, EEOC will ask the jury for a verdict in its favor on the issue of liability, damages, and willfulness. EEOC will then seek equitable and injunctive relief from the Court.

Respectfully Submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

DEBRA M. LAWRENCE
Regional Attorney

*/s/ Maria Luisa Morocco*
Maria Luisa Morocco
Assistant Regional Attorney
U.S. EEOC, Washington Field Office
131 M Street, N.E. Suite 4NW02F
Washington, D.C. 20507
Phone: 202-419-0724
maria.morocco@eeoc.gov

*/s/ Joshua E. Zugerman*
JOSHUA E. ZUGERMAN
Senior Trial Attorney
U.S. EEOC, Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107
Phone: 267-589-9763
Fax: 215-440-2848
joshua.zugerman@eeoc.gov

*/s/ Ashley M. Martin*
Ashley Martin
Senior Trial Attorney
U.S. EEOC, Washington Field Office
131 M Street, N.E. Suite 4NW02F
Washington, D.C. 20507
Phone: 202-419-0749
Fax: 202-653-6053
ashley.martin@eeoc.gov

## **CERTIFICATE OF SERVICE**

I, Joshua Zugerman, certify that on February 17, 2023, I caused the foregoing Trial Brief to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all parties of record.

*/s/ Joshua E. Zugerman*
JOSHUA E. ZUGERMAN
Senior Trial Attorney
U.S. EEOC, Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107
Phone: 267-589-9763
Fax: 215-440-2848
joshua.zugerman@eeoc.gov